*Court Of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*



# OPINION

No. 04-08-00839-CV

**LANCER INSURANCE COMPANY**,
Appellant

v.

Oscar **PEREZ, II,** Daniel Calhoun, Adriana Riojas, Juan Gabriel Gonzalez, Marisol Salazar,
Raul Guerra, Jr., Maria E. Guerra, and John A. Vela, Jr.,
Appellees

From the 79th Judicial District Court, Jim Wells County, Texas
Trial Court No. 06-08-44850-CV
Honorable Richard C. Terrell, Judge Presiding

**OPINION ON APPELLANT'S MOTION FOR REHEARING**

Opinion by:    Phylis J. Speedlin, Justice

Sitting:    Catherine Stone, Chief Justice
Phylis J. Speedlin, Justice
Steven C. Hilbig, Justice

Delivered and Filed: December 23, 2009

REVERSED AND REMANDED IN PART; REVERSED AND RENDERED IN PART

The motion for rehearing filed by appellant, Lancer Insurance Company, is denied. This court's opinion and judgment dated November 4, 2009 are withdrawn, and this opinion and judgment are substituted. We substitute this opinion to clarify a portion of the opinion.

This appeal involves a dispute over coverage under a business automobile insurance policy

issued by Lancer Insurance Company. Two summary judgment motions were granted against Lancer in favor of coverage. Because we conclude material issues of fact exist as to one summary judgment, we reverse and remand in part; in addition, we reverse and render in part due to the remaining movant's lack of standing.

### FACTUAL AND PROCEDURAL BACKGROUND

On April 30, 2004, members of the Alice High School band went on an overnight field trip to Six Flags Fiesta Texas in San Antonio, Texas. The Alice Independent School District contracted with Garcia Holiday Tours to transport the students on one of its buses. The bus driver was Raul Garcia, an employee of Garcia Holiday Tours. Unknown to Raul Garcia, he was infected with active tuberculosis. During the trip, several students observed Raul Garcia coughing on the bus. After the trip, Raul Garcia was diagnosed with active tuberculosis and all the passengers were subsequently tested. While some of the passengers' tests were negative, several of the passengers tested positive for latent tuberculosis. The passengers who tested positive brought suit against Raul Garcia and Garcia Holiday Tours, asserting they were negligently exposed to the tuberculosis while on the trip and contracted it as a result of being in the closed environment of the bus. There were two main groups of plaintiffs, the Perez plaintiffs and the Salazar plaintiffs, in the underlying tort case styled *Oscar Perez, II, et al. v. Raul Garcia, et al.*, Cause No. 05-03-43200, in the 79th District Court of Jim Wells County, Texas (referred to herein as the "Passengers' Suit"). Another passenger who tested positive, John A. Vela, Jr., did not join in the Passengers' Suit, but later brought his own separate suit styled *John A. Vela, Jr. v. Raul Garcia and Garcia Holiday Tours, L.C.*, Cause No. 08-02-46693, in the 79th District Court of Jim Wells County, Texas (referred to herein as the "Vela Suit"), which remains pending.

Upon being sued by the passengers, Garcia Holiday Tours made a written demand on Lancer for it to defend pursuant to the business automobile insurance policy Lancer had issued covering the bus. Lancer denied it had a duty to defend, and the Passengers' Suit proceeded to trial. The jury found in favor of the passengers, and they were awarded a judgment for $5.25 million in total damages against Raul Garcia and Garcia Holiday Tours.

After judgment was rendered in the underlying tort action, Raul Garcia and Garcia Holiday Tours proceeded to seek recovery against Lancer on contractual and extra-contractual[1] claims in Cause No. 06-08-44850. In their declaratory judgment suit, Raul Garcia and Garcia Holiday Tours asserted Lancer had a duty to defend and has a duty to indemnify them for the full amount of the $5.25 million judgment rendered in the Passengers' Suit. The passengers and Vela intervened in the declaratory judgment coverage action. During the course of the coverage action, several motions for summary judgment were filed. The passengers[2] filed a traditional motion for a partial summary judgment requesting a declaratory judgment that Lancer has an obligation to indemnify Raul Garcia and Garcia Holiday Tours and pay the passengers for the $5.25 million judgment. Vela filed his own traditional motion for summary judgment seeking to establish that Lancer has a duty to defend and indemnify Raul Garcia and Garcia Holiday Tours in his pending lawsuit. Lancer also affirmatively sought summary judgment denying any duty to defend or indemnify Raul Garcia and Garcia Holiday

---

[1] Raul Garcia and Garcia Holiday Tours alleged claims for breach of the duty to defend, breach of the duty of good faith and fair dealing, deceptive insurance practices and prompt payment violations under the Insurance Code, and negligence based on Lancer's refusal to defend them in the Passengers' Suit.

[2] Both the Perez and Salazar plaintiffs filed motions for summary judgment based on nearly identical grounds. The trial court ultimately granted both motions in one order.

Tours under its business automobile policy. The only party who did not seek summary judgment was Raul Garcia/Garcia Holiday Tours.

In October 2008, the trial court signed three summary judgment orders that: (1) granted the passengers' summary judgment motion, and held Lancer has a duty to indemnify Raul Garcia and Garcia Holiday Tours for the judgment in the Passengers' Suit; (2) granted Vela's summary judgment motion, and held Lancer has a duty to defend and indemnify Raul Garcia and Garcia Holiday Tours in the pending Vela Suit; and (3) denied Lancer's summary judgment motion. Both the passengers' and Vela's claims against Lancer were severed out from Raul Garcia and Garcia Holiday Tours' suit against Lancer, and the summary judgments in favor of the passengers and Vela became final for purposes of appeal. Lancer now appeals.[3]

## ANALYSIS

On appeal, Lancer challenges the trial court's summary judgment in favor of the passengers on the grounds that: (1) the order declaring Lancer has a duty to indemnify Raul Garcia and Garcia Holiday Tours for the passengers' judgment is defective because it does not include a duty to defend finding, and the passengers' pleadings do not support a duty to defend finding; and (2) the passengers' summary judgment evidence failed to establish as a matter of law that Lancer has a duty to indemnify Raul Garcia and Garcia Holiday Tours for the passengers' judgment.[4] In addition, Lancer challenges the summary judgment in favor of Vela on the grounds that: (1) Vela does not

---

[3] In an order dated January 29, 2009, we consolidated Lancer's two appeals from the summary judgment orders entered in favor of the Passengers and Vela into a single appeal proceeding under this Appeal No. 04-08-00839-CV.

[4] In addition, in its brief Lancer asserted the passengers' summary judgment is erroneous because it imposes an obligation to indemnify beyond Lancer's $5 million policy limit. We need not address the policy limit issue because the passengers stipulated in their brief that they are only seeking to recover up to the policy limits from Lancer, not the full $5.25 million amount of the judgment.

have standing in this coverage action; and (2) the court's finding of a duty to defend is not supported by Vela's pleadings, and its finding of a duty to indemnify is premature because Vela's suit is pending. Lancer asserts that we should reverse the summary judgments in favor of the passengers and Vela, and render judgment in Lancer's favor pursuant to its summary judgment motion. Alternatively, Lancer asserts that we should reverse and remand for a trial on the material fact issue of whether the tuberculosis was caused by the "use" of the bus as required under the Lancer insurance policy.

### Standard of Review

When both parties move for summary judgment, and the trial court grants one motion and denies the other, the appellate court considers the summary judgment evidence presented by both sides, determines all questions presented, and, if it determines the trial court erred, renders the judgment the trial court should have rendered. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000). We review the trial court's ruling on a motion for summary judgment *de novo. Provident Life and Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, indulging every reasonable inference and resolving any doubts in the nonmovant's favor. *Id.* A party moving for a traditional summary judgment must show that no genuine issue of material fact exists and that it is entitled to summary judgment as a matter of law. *Id.* at 215-16; TEX. R. CIV. P. 166a(c). When the trial court's order does not specify the grounds for granting summary judgment, the appellate court must affirm if any of the theories presented in the motion have merit. *Knott*, 128 S.W.3d at 216; *Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 626 (Tex. 1996).

**SUMMARY JUDGMENT: DUTY TO DEFEND & INDEMNIFY**

***Interplay Between An Insurer's Duty to Defend & Duty to Indemnify***

We begin by noting that it is well established that an insurer's duty to indemnify is a "distinct and separate" duty from the duty to defend. *Utica Nat'l Ins. Co. of Tex. v. Am. Indem. Co.*, 141 S.W.3d 198, 203 (Tex. 2004); *Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 821-22 (Tex. 1997). Whether a duty to defend exists is determined under the "eight-corners rule," by examining the claims alleged within the four corners of the plaintiff's petition and the coverage provided in the insurance policy. *Pine Oak Builders, Inc. v. Great Am. Lloyds Ins. Co.*, 279 S.W.3d 650, 654 (Tex. 2009). "If a petition does not allege facts within the scope of coverage, an insurer is not legally required to defend a suit against its insured." *Id.* (quoting *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Merchs. Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997)). In determining whether an insurer has a duty to indemnify, we similarly look to the policy language, but compare that language with the actual facts proven in the underlying suit that establish liability. *Pine Oak Builders*, 279 S.W.3d at 655-56; *GuideOne Elite Ins. Co. v. Fielder Road Baptist Church*, 197 S.W.3d 305, 310 (Tex. 2006). In interpreting the applicable provisions of the insurance policy, we apply standard contract interpretation principles and seek to construe the parties' intent from the policy as a whole based on the plain written language. *Utica*, 141 S.W.3d at 202; *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex. 1994). When terms are defined in an insurance policy, the definition controls. *Cowan*, 945 S.W.2d at 823.

Even if an insurer has a duty to defend, and breaches it, the party seeking indemnification still bears the burden of establishing a duty to indemnify if the insurer contests coverage. *Utica*, 141 S.W.3d at 203; *see Tex. Farmers Ins. Co. v. McGuire*, 744 S.W.2d 601, 602-03 (Tex. 1988) ("The

doctrine of estoppel cannot be used to create insurance coverage when none exists by the terms of the policy."). If the questions of coverage and indemnity turn on the resolution of disputed fact questions, summary judgment is inappropriate. *See Utica*, 141 S.W.3d at 204-05 (disagreeing that summary judgment record established insurer's duty to indemnify as a matter of law, and reversing and remanding to the trial court for a determination of insurer's indemnity obligation).

### *Is the Passengers' Summary Judgment Order Defective?*

Lancer initially asserts the summary judgment order declaring it has a duty to indemnify Raul Garcia and Garcia Holiday Tours for the judgment in the Passengers' Suit is defective because the court did not consider whether Lancer had a duty to defend. Lancer further argues that because the pleadings in the underlying suit do not invoke a duty to defend, Lancer could not and does not have a duty to indemnify the passengers. We disagree. As we have previously noted, *Utica* stresses that the duty to defend and the duty to indemnify are separate and distinct. *Id.* at 203. The respective duties differ in scope, and are invoked under different circumstances. *GuideOne*, 197 S.W.3d at 310. The duty to defend turns on the "factual allegations that potentially support a covered claim," while the duty to indemnify turns on "the facts actually established in the underlying suit." *Pine Oak*, 279 S.W.3d at 656. At the time the court ruled on the summary judgment motions, the insured's tort liability had already been resolved by a jury. The only issue before the court in the declaratory judgment action was whether Lancer has an obligation to indemnify Raul Garcia and Garcia Holiday Tours for the judgment rendered for the passengers in the underlying tort action. The record shows the trial court correctly recognized that an insurer's duties to defend and indemnify are separate and

distinct, and stressed that this case was at the indemnification stage.[5]  Furthermore, the Supreme

Court recently rejected the same argument made by Lancer, holding that "the duty to indemnify is

not dependent on the duty to defend and . . . an insurer may have a duty to indemnify its insured

even  if the duty to defend never arises."  *D.R. Horton-Texas, Ltd. v. Markel International Ins. Co.*,

No. 06-1018, 2009 WL 4728008, at *1 (Tex. Dec. 11, 2009).  Accordingly, the trial court did not

err in looking only to the policy and "the facts actually established in the underlying suit."  *Id.* at *3;

*Pine Oak*, 279 S.W.3d at 656.  The court simply was not required to look to the underlying pleadings

in making its determination of whether Lancer had a duty to indemnify its insured.  *D.R. Horton-*

*Texas,* 2009 WL 4728008, at *3.  We hold the trial court's summary judgment order holding Lancer

has a duty to indemnify in the Passengers' Suit is not deficient in the manner asserted by Lancer.

***The Policy Language***

The relevant provisions of Lancer's business automobile insurance policy provided as

follows:

SECTION II – LIABILITY COVERAGE

A. Coverage

**We will pay all sums an "insured" legally must pay as damages because of
"bodily injury" or "property damage" to which this insurance applies, caused
by an "accident" and resulting from the ownership, maintenance or use of a
covered "auto."**

* * *

---

[5] At a hearing on severance and other matters on November 3, 2008, the parties discussed whether the summary judgment order granting the passengers' motion should include both the duty to defend and the duty to indemnify.  The trial judge stated that the case was at the indemnification stage, explaining, ". . . that should be a duty to indemnify, because I think the duty to defend . . . how do you defend something that's already been adjudged?  So, I think it's–we're at the indemnification stage of this, aren't we?"

SECTION V – DEFINITIONS

A. "Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage."

B. "Auto" means a land motor vehicle . . . designed for travel on public roads . . . .

C. "Bodily injury" means bodily injury, sickness or disease sustained by a person including death resulting from any of these.

On appeal, Lancer has conceded that infection with tuberculosis falls within the policy's language defining "bodily injury," which includes a "sickness or disease." Lancer has further conceded that the tuberculosis infection constitutes an "accident" under the policy's definition, which includes "continuous or repeated exposure to the same conditions resulting in 'bodily injury.'" Lancer asserts, however, that the "bodily injury" caused by the "accident" did not result from the "use" of the bus itself as required for coverage, but rather from the presence of an infected person—the bus driver; therefore, the "accident" does not fall within the scope of its policy. Lancer goes even further, contending that an "accident" consisting of an infection with a contagious disease could never be covered under this type of business automobile policy and was never intended to be within the policy's coverage.[6] Before we determine whether the passengers' summary judgment evidence conclusively established that the infection resulted from the "use" of the bus itself, we must address Lancer's assertion that there could never be coverage for this type of "accident" under the policy language.

---

[6] Property Casualty Insurers Association, an insurance company trade group, filed an amicus curiae brief in support of Lancer's position stating that the purpose of an automobile insurance policy is to cover injuries resulting from auto accidents, and "if courts expand coverage to include infectious diseases caught in automobiles, then the nature of the policy would change . . . [and] the task of underwriting would become more complex, and more costly."

*No Possible Coverage for Infectious Disease "Accident" under the Policy?*

Lancer has consistently argued, both in its own summary judgment motion and its response to the passengers' summary judgment motions, that "as a matter of law" under the policy language it could never have a duty to defend or indemnify under the circumstances of this case in which bus passengers were infected with the bus driver's airborne disease.

We disagree with Lancer's broad assertion that "as a matter of law" there could never be coverage under these circumstances in view of *Mid-Century Ins. Co. of Tex. v. Lindsey*, 997 S.W.2d 153 (Tex. 1999), which all parties agree is the seminal case on this issue. In *Lindsey*, the Supreme Court held that bodily injuries from a shotgun fired from a gun rack in a parked pickup truck were caused by an "accident" "arising out of the 'use' of the vehicle," and were thus covered by a standard personal automobile policy. *Id.* at 158, 164 (young boy entered pickup truck by climbing through back window, thereby causing shotgun in mounted gun rack to discharge and injure passenger in another vehicle). The Court first concluded that the term "accident," or even the presumably more restrictive terms "auto accident" and "motor vehicle accident," in an auto insurance policy do not necessarily require a vehicle collision. *Id.* at 155 ("[R]ather, both the actor's intent and the reasonably foreseeable effect of his conduct bear on the determination of whether an occurrence is accidental.").

With respect to whether an injury arises out of the "use" of a motor vehicle, the Court in *Lindsey* created a list of factors based on two well-known insurance treatises, Appleman and Couch, to guide courts in making that determination for purposes of auto liability insurance coverage. *Id.* at 157. The Court stated,

> For an injury to fall within the 'use' coverage of an automobile policy (1) the accident must have arisen out of the inherent nature of the automobile, as such, (2) the accident must have arisen within the natural territorial limits of an automobile, and the actual use must not have terminated, (3) the automobile must not merely contribute to cause the condition which produces the injury, but must itself produce the injury.

*Id.* The Court explained that all the factors are "unavoidably abstract," but still helpful in focusing the analysis; however, the factors do not constitute an absolute test. *Id.*

The third *Lindsey* factor involving a causal connection between the "use" of the vehicle and the accident has been recognized as "especially troublesome" because the "degree of the vehicle's involvement in the production of the injury is a difficult factor to judge . . . ." *Id.* at 158 (citing multiple cases illustrating the difficulty). The *Lindsey* court explained,

> Fundamentally, of course, the issue is what coverage is intended to be provided by insurers and acquired and shared by premium-payers. A drive-by shooting involves a vehicle only incidentally. The shooter could be standing still and accomplish the same result. In such a situation, even if the first two factors of the Appleman/Couch test were satisfied, the third could not be because the vehicle's role in the occurrence is minimal as compared with the shooter's. The vehicle is the mere situs of an incident that could have occurred anywhere. The shooting has nothing to do with the use of the vehicle as a vehicle.

*Id.* at 158. The Court stressed that each individual case must be examined to attempt to assess the particular facts and circumstances that gave rise to the injury. *Id.* at 159. However, the Court also noted that, "Generally, '[i]f the . . . incident could have occurred *regardless of the vehicle*, the courts seem to be consistent in holding there is no coverage' . . . [b]ut when the injury-producing act and its purposes are *an integral part of the use of the vehicle as such*, [the] injury caused . . . has generally been held to arise out of use of the vehicle." *Id.* at 159, 161 (emphasis added).

As an illustration of the application of its analysis, the *Lindsey* court compared an injury which results from purposefully handling a gun inside or around a vehicle with an injury caused by

handling a gun for the purpose of placing it inside or removing it from a vehicle. *Id.* at 159-161. In the former, the vehicle is merely the site of the injury and its use is incidental to the injury-producing act — it could have occurred regardless of the vehicle; therefore, the injury did not arise out of the use of the vehicle. In the latter, the injury-producing act and its purpose are an integral part of the use of the vehicle — it could not have occurred regardless of the vehicle; therefore, the injury arose out of the use of the vehicle. *Id.*

Courts have considered whether various types of unusual accidents arose out of the "use" of a vehicle with varying outcomes. Some cases have resulted in courts holding the vehicle was merely the site of an injury which could have occurred regardless of the vehicle. *See, e.g.*, *Nat'l Union Fire Ins. Co. v. Merchs. Fast Motor Lines*, 939 S.W.2d at 141-42 (passenger's pleadings did not sufficiently allege that gunshot injury resulting from driver's negligent discharge of gun inside truck was "caused by an accident resulting from . . . use of a covered auto," as the mere fact that truck was the site of the accident is not enough to allege necessary causal nexus between accident and use of truck, and thus insurer's duty to defend was not triggered); *Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 543 (Tex. 2003) (holding injuries of bus passenger who was attacked by another passenger after disembarking from the bus did not arise from the "use" of the bus, but from the driver's failure to supervise the public, and thus Tort Claims Act did not waive governmental immunity to passenger's negligence claim); *LeLeaux v. Hamshire-Fannett Indep. Sch. Dist.*, 835 S.W.2d 49, 51 (Tex. 1992) (student on school band trip who injured her head on an emergency door frame while on the unattended parked bus did not incur an injury arising out of the "use" of the bus because bus was merely the site of the injury, and thus school district's immunity was not waived under Tort Claims Act); *Martinez v. VIA Metro. Transit Auth.*, 38 S.W.3d 173, 176 (Tex. App.—San

Antonio 2000, no pet.) (injury to disabled passenger on government-owned bus did not arise out of use or operation of bus, as bus was merely the setting for the injury, and thus government's immunity from liability was not waived); *Aetna Cas. and Sur. Co. v. U. S. Fidelity and Guar. Co.*, 806 F.2d 302, 303-04 (1st Cir. 1986) (applying Massachusetts law to conclude a bus driver's sexual assault of a child on a school bus did not result from the "use" of the bus as a bus, and thus the resulting damages were not covered by a business auto policy).

Other cases, however, have held that the injury-producing act and its purpose were an integral part of the vehicle, and thus arose out of the "use" of the vehicle itself. *See, e.g.*, *Lincoln Gen'l Ins. Co. v. Aisha's Learning Ctr.*, 468 F.3d 857, 860 (5th Cir. 2006) (applying *Lindsey* factors, Fifth Circuit concluded a daycare center van caused rather than merely contributed to the conditions that produced a child's injuries where the child was left in the van for seven hours while it was parked in a hot parking lot; thus, the child's injuries arose out of the "use" of the van); *Lyons v. State Farm Lloyds and Nat'l Cas. Co.*, 41 S.W.3d 201, 205-06 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) (holding that the injuries of a woman who fell while attempting to get on a parked trailer used for hay rides arose out of the "use" of the vehicle "as a vehicle"); *Austin Indep. Sch. Dist. v. Gutierrez*, 54 S.W.3d 860, 863-66 (Tex. App.—Austin 2001, pet. denied) (applying common ordinary meaning of "use" and holding student's death arose out of the "use" of the bus where the school bus driver honked the horn to signal that student could safely cross the street, and thus school district's immunity from suit was waived).

Under *Lindsey* and its progeny, we cannot say that the circumstances presented by this case could never fall within the language of Lancer's business automobile policy as a matter of law. Therefore, we must apply the *Lindsey* factors to determine whether the passengers' summary

judgment evidence conclusively established the critical issue before us — whether the tuberculosis infection resulted from the "use" of the bus itself, as required for coverage under the Lancer policy.

***Did the Passengers Prove the Infection Resulted From the "Use" of the Bus as a Matter of Law?***

Lancer contends the passengers' summary judgment evidence failed to establish as a matter of law that their infection with tuberculosis resulted from the "use" of the bus under the *Lindsey* factors. We recognize that application of the *Lindsey* analysis is fact-specific and turns on the particular facts of each case; therefore, we now turn to the summary judgment evidence to determine whether the passengers proved their infection resulted from the "use" of the bus as a matter of law.

In support of their summary judgment motions,[7] the passengers attached the following summary judgment evidence relevant to the issue of "use" of the bus: (1) the Lancer insurance policy; and (2) the transcript and exhibits from the trial in the underling tort action. With respect to the *Lindsey* factors concerning whether the infections resulted from the "use" of the bus, in their motions the passengers specifically directed the trial court's attention to the following trial testimony: (i) Raul Garcia testified he drove the bus load of Alice High School students to San Antonio on the weekend of April 30, 2004 while he had a bad cough which was later diagnosed as tuberculosis; (ii) Raul Garcia testified the air conditioning system on the bus re-circulated the air inside of the bus, which caused the passengers to breath the same air as him; (iii) Louis Garcia, owner of Garcia Holiday Tours, testified the bus had windows which could be opened, but Garcia Holiday Tours instructs the passengers not to open the windows; and (iv) Louis Garcia also testified the air conditioning/ventilation system on the bus has a button that can be pushed at the bus driver's

---

[7] In their supplemental summary judgment motion, in which all the passengers joined, the Perez plaintiffs and Salazar plaintiffs adopted and incorporated by reference the others' summary judgment motion and summary judgment evidence.

discretion to allow fresh air in from the outside; Garcia admitted that during his deposition he had testified that when the bus is being driven "there's no ventilation coming from outside" and the air inside is just re-circulated, but explained he had researched the system and learned about the fresh air button after his deposition. The passengers asserted in their motions that this evidence established the infections resulted from the inherent nature of a commercial bus used to transport large groups of people "breathing the same air as the driver;" they further asserted it proved the infections occurred inside the bus within its natural territorial limits, and resulted from the use of the bus's closed air conditioning/ventilation system which re-circulated the infected air within the bus.

In its response, and its own summary judgment motion,[8] Lancer asserted that none of the *Lindsey* factors are satisfied by the passengers' summary judgment evidence, and therefore they failed to prove as a matter of law that the use of the bus infected the passengers with tuberculosis. Lancer argues on appeal that the trial evidence shows that: (i) it was Raul Garcia, the human bus driver, not the bus itself, who spread the infectious disease by coughing—which arguably could have happened regardless of the bus; (ii) there was nothing inherent in the nature of the bus that could have caused the disease separate and apart from the presence of the infected driver; (iii) there was testimony that some of the passengers who tested positive were exposed to the bus driver outside of the confines of the bus during the course of the weekend; and (iv) there was conflicting evidence as to whether fresh air from outside entered the bus's air conditioning/ventilation system while it was in operation. Indeed, the record shows that some of the passengers testified they were exposed to the bus driver while standing outside the bus and at the hotel. Further, the trial record also shows

---

[8] In its response to the passengers' summary judgment motions, Lancer incorporated the passengers' summary judgment evidence. Lancer also attached its insurance policy, among other documents, to its own motion for summary judgment.

there was conflicting testimony as to whether outside air was ever introduced into the air conditioning/ventilation system of the bus during the trip. Raul Garcia testified that the air conditioning system on the bus re-circulated the air inside of the bus, and that the passengers would therefore be breathing the same air he was breathing. On the other hand, Louis Garcia testified that a fresh air button was part of the air conditioning/ventilation system on the bus, and that if the driver, in his discretion, pressed the button it would permit outside air to come into the bus's air conditioning/ventilation system; Garcia explained that he erroneously testified in his pre-trial deposition that if the bus's air conditioning system was operating, it was recirculating the inside air with no introduction of outside air. No witness testified, however, as to whether the fresh air button was ever pressed during the trip.

With respect to the third *Lindsey* factor requiring that the bus itself must have produced the injury, and not merely contributed to cause the condition, Lancer stresses that no witness, whether lay or expert, testified that the air conditioning/ventilation system on the bus caused[9] the infections by spreading the virus throughout the bus. *See, e.g., Schaefer v. Tex. Employers' Ins. Ass'n.*, 612 S.W.2d 199, 202-05 (Tex. 1980) (causal connection between tuberculosis infection and workers' compensation claimant's employment may be proved by expert testimony); *Abraham v. Union Pacific R. Co.*, 233 S.W.3d 13, 17-18 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) (in negligence case involving exposure to toxic chemical, existence of causal connection between the exposure and the disease required specialized expert knowledge and testimony because such matters

---

[9] As one of its sub-issues on appeal, Lancer asserts that the causation language in its policy requiring that the bodily injury caused by the accident "result from" the use of the covered vehicle constitutes a higher degree of causation than the phrase "arise out of" that was interpreted in *Lindsey* as meaning simply a "causal connection or relation" between the accident or injury and the use of the vehicle. *See Lindsey*, 997 S.W.2d at 156. We do not reach this issue due to our conclusion that disputed fact issues preclude summary judgment.

are not within the common knowledge of lay persons); *Pilgrim's Pride Corp. v. Smoak*, 134 S.W.3d 880, 889 (Tex. App.—Texarkana 2004, pet. denied) (trier of fact may decide causation based on lay witness testimony when general experience and common sense enable a lay person to determine the causal relationship, or on expert testimony when scientific principles are needed to establish the causal relationship). Lancer also points to the conflicting testimony in the trial record about whether outside air was brought into the bus, asserting it creates at least a fact issue on causation. Lancer contends that, at best, the trial evidence established that the bus's air conditioning/ventilation system may have furnished a condition which contributed to the transmission of the tuberculosis virus, which is insufficient to satisfy the third *Lindsey* factor.

On appeal, the passengers respond by arguing that the presence of a bus driver was a necessary component in order for the bus to be used according to its inherent nature and for its intended purpose of commercial mass transportation. The passengers also contend that the bus by its inherent nature was an enclosed environment with many people in close contact, and that based on the trial evidence that the bus's air conditioning system was operating during the trip, recirculating the air inside the bus, they have established that the bus itself acted to spread the tuberculosis virus to the passengers while inside the bus, even to those in the back of the bus. While they concede there is some evidence of inadvertent contact between the bus driver and the passengers outside the bus, the passengers argue that the majority of the exposure to the driver during the trip occurred inside the enclosed environment of the bus, where several passengers testified they observed the driver coughing while the air conditioning system was operating within the bus.

Viewing the summary judgment evidence in the non-movant Lancer's favor, as we must, we conclude there is conflicting evidence in the summary judgment record as to whether the passengers

were infected with tuberculosis while inside the bus's natural territorial limits, or whether they were infected during contact with the bus driver outside the bus; therefore, the summary judgment record does not conclusively establish that the "accident" occurred within the natural territorial limits of the bus. *See Lindsey*, 997 S.W.2d at 157. Further, we agree with Lancer that, based on the conflicting evidence as to whether outside air was introduced into the bus's air conditioning/ventilation system during the trip, the passengers also failed to establish "as a matter of law" that the third *Lindsey* factor was met. *See id.* at 156-58. As the movants, the burden was on the passengers to establish every element of their declaratory judgment claim in order to obtain a summary judgment under Rule 166a. TEX. R. EVID. 166a; *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985) (movant for summary judgment has burden to show there is no genuine issue of material fact and thus entitled to judgment as a matter of law). The passengers failed to prove as a matter of law where and how the tuberculosis infections occurred; therefore, we cannot say they established that the tuberculosis infections resulted from the use of the bus "as a matter of law." Because material fact questions exist on the issue of "use" of the bus, the passengers were not entitled to summary judgment on their declaratory judgment claim in this coverage action. *Knott*, 128 S.W.3d at 215. Therefore, we must reverse the passengers' summary judgment order and remand to the trial court for further proceedings on these issues. *See Utica*, 141 S.W.3d at 200 ( reversing summary judgment on duty to indemnify based on disputed fact issue and remanding for further trial court proceedings).

### *Lancer's Motion for Summary Judgment*

On appeal, Lancer also asks us to review the denial of its affirmative summary judgment motion and, upon review, to reverse and render judgment in its favor on both the contractual and extra-contractual claims. As a general matter, we cannot review the denial of a summary judgment

motion. *United Water Services, L.L.C. v. Zaffirini*, No. 04-08-00211-CV, 2009 WL 136925, at *7 (Tex. App.—San Antonio Jan. 21, 2009, pet. denied) (denial of summary judgment motion does not finally decide any question before the court); *Anderson v. Bormann*, 489 S.W.2d 945, 946-47 (Tex. Civ. App.—San Antonio 1973, writ ref'd n.r.e.). To the extent Lancer had a competing summary judgment motion on the existence of a duty to defend and indemnify in the Passengers' Suit, we have already determined, *supra*, that under *Lindsey* and its progeny we do not agree that the circumstances presented by this case could never fall within the language of Lancer's business automobile policy as a matter of law; therefore, we hold the trial court did not err in denying Lancer's summary judgment motion on that basis. As to Lancer's affirmative defense to the extra-contractual claims asserted by Garcia Holiday Tours against Lancer, those claims were not severed out into the cause before us and are pending in the trial court below; therefore, we have no jurisdiction to address Lancer's request for summary judgment based on its affirmative defense that Garcia Holiday Tours' extra-contractual claims are barred by limitations.

### Vela's Summary Judgment

Finally, Lancer challenges the summary judgment order declaring that it has a duty to defend and indemnify Raul Garcia and Garcia Holiday Tours in the pending Vela Suit. Lancer asserts that Vela has no standing to pursue his claim in intervention in this coverage action between Lancer and its insured Garcia Holiday Tours, and therefore the trial court erred in granting Vela's motion for summary judgment. Vela replies that Lancer is estopped from asserting that Vela has no standing because Lancer admitted that a controversy exists between them by suing Vela in federal court for

a declaratory judgment that it has no duty to defend or indemnify in Vela's pending state court action.[10]

Vela filed his original tort petition against Raul Garcia and Garcia Holiday Tours on February 11, 2008, after the $5.25 million judgment was rendered in the Passengers' Suit.[11] Then, on March 19, 2008, Vela intervened in this declaratory judgment coverage action between Lancer and Raul Garcia/Garcia Holiday Tours, asserting that his factual allegations are identical to those in the Passengers' Suit and requesting a declaratory judgment that his claim is covered under the Lancer policy. Lancer moved for summary judgment, asserting that Vela lacked standing to pursue his claim in intervention because he was not a party to the Passengers' Suit, and thus there is no real justiciable controversy between Vela and Lancer in this coverage action. Vela in turn sought summary judgment against Lancer on his claim that Lancer owes a duty to defend and indemnify in his pending suit.

Vela argues that Lancer is judicially estopped from challenging his standing. We disagree. As a necessary component of subject matter jurisdiction, standing cannot be conferred by estoppel, consent or waiver. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443-45 (Tex. 1993); *In re H.G.*, 267 S.W.3d 120, 124-25 (Tex. App.—San Antonio 2008, pet. denied). The concept of standing identifies those disputes that are appropriate for resolution through the judicial process. *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990); *Brown v. Todd*, 53 S.W.3d 297, 305 (Tex. 2001).

---

[10] Lancer filed a federal declaratory judgment action with respect to Vela's state claims on February 21, 2008, shortly after Vela filed his original state petition. The federal district court dismissed Lancer's suit in its orders dated December 11, 2008 and February 17, 2009 because the declaratory judgment suit was barred under *res judicata* and the Anti-Injunction Act; the court alternatively denied Lancer's summary judgment motion.

[11] The judgment in the Passengers' Suit was signed on September 19, 2007.

Standing requires that a real controversy exist between the parties which will be actually determined by the judicial declaration sought. *Tex. Ass'n of Bus.,* 852 S.W.2d at 446; *Tex. Workers' Comp. Comm'n v. Garcia*, 893 S.W.2d 504, 517-18 (Tex. 1995). "[A] plaintiff's complaint must establish that he has a 'personal stake' in the alleged dispute" and that the "injury suffered is 'concrete and particularized.'" *Brown*, 53 S.W.3d at 305 (quoting *Raines v. Byrd*, 521 U.S. 811, 819 (1997)).

Here, unlike Garcia Holiday Tours, Vela is not the insured under the Lancer policy, and, unlike the passengers, Vela's claims have never been adjudicated and he does not hold a judgment against Lancer's insured. *See Griffin,* 955 S.W.2d at 82-83; *see also Collier v. Allstate County Mut. Ins. Co.*, 64 S.W.3d 54, 62 (Tex. App.—Fort Worth 2001, no pet.) (duty to indemnify only arises after an insured has been adjudicated to be legally responsible for damages in the lawsuit). Moreover, Garcia Holiday Tours never moved for a summary judgment declaring that Lancer owes it a duty to defend or indemnify in the Vela Suit. We conclude that Vela has no justiciable interest in this coverage action, and thus no standing. Accordingly, we reverse the summary judgment in favor of Vela and render judgment dismissing Vela's declaratory judgment claim for want of jurisdiction.[12]

### CONCLUSION

Based on the foregoing analysis, we conclude that disputed fact questions exist concerning whether the bodily injury caused by the accident resulted from the "use" of the bus under the *Lindsey* factors. The passengers therefore did not prove as a matter of law that their infection with tuberculosis resulted from the "use" of the Garcia Holiday Tours' bus. Accordingly, we reverse the

---

[12] Our opinion should not be read as precluding Raul Garcia/Garcia Holiday Tours' right to seek a defense and indemnification from Lancer against Vela's claim.

summary judgment in favor of the passengers, and remand to the trial court for further proceedings consistent with this opinion. As to Vela, we conclude he lacks standing and therefore reverse the summary judgment in Vela's favor and render judgment dismissing Vela's declaratory judgment claim for want of jurisdiction.


Phylis J. Speedlin, Justice