IN THE SUPREME COURT OF TEXAS
 
════════════
No. 
10-0096
════════════
 
Lancer Insurance Company, 
Petitioner,
 
v.
 
Garcia Holiday Tours, et al., 
Respondents
 
════════════════════════════════════════════════════
On Petition for Review from 
the
Court of Appeals for the 
Fourth District of Texas
════════════════════════════════════════════════════
 
 
Argued January 4, 2011
 
 
            
Justice Medina delivered 
the opinion of the Court.
            
The question in this appeal is whether the transmission of a communicable 
disease from the driver of a motor vehicle to a passenger is a covered loss 
under a business auto policy, which affords coverage for accidental bodily 
injuries resulting from the vehicle’s use. The issue is one of first impression 
in this state and perhaps the country. The parties advise that they have found 
no similar reported cases.
            
The trial court concluded that the policy covered this type of occurrence 
and rendered summary judgment that the insurance carrier owed a duty to 
indemnify the insured. The court of appeals agreed that the policy might provide 
coverage for such a claim but reversed the summary judgment and remanded the 
case to the trial court to resolve a factual dispute about whether the 
passengers had contracted the disease while in the vehicle. 308 S.W.3d 35, 47 
(Tex. App.—San Antonio 2009). Because we conclude that communicable diseases are 
not an insured risk under this particular policy, we reverse the judgment below 
and render judgment for the insurance carrier.
I
            
Garcia Holiday Tours operates a commercial bus company in South Texas. It 
contracted with the Alice Independent School District to provide a bus and 
driver for a field trip to Six Flags Fiesta Texas in San Antonio. The trip was 
for members of the Alice High School band, several of whom observed the driver 
coughing during the trip. Upon their return, the driver was hospitalized after 
being diagnosed with an active case of tuberculosis.
            
Tuberculosis, or TB, is a bacterial infection that can live in a person’s 
body without making the person sick.[1] In this inactive state, referred to as 
latent tuberculosis, the disease is not contagious. Active tuberculosis, on the 
other hand, is contagious and commonly transmitted by the infected person 
coughing or sneezing. As one court has observed: “The vast 
majority of tubercular patients gain their infection through inhalation of the 
bacilli directly into the lungs. Infection is usually due to the 
inhalation of wet sputum coughed into the air, where it may float about in the 
form of tiny globules for a considerable time and distance.” Earle v. Kuklo, 98 A.2d 107, 108 
(N.J. Super. Ct. App. Div. 1953) (citing 1 Gray, Attorney’s Textbook of Medicine § 
36.11, p. 542 (3rd ed. 1949)).
            
The immune systems of most people who breathe in the TB bacteria are able 
to fight off the disease, and thus the newly infected person remains 
asymptomatic. Only about 10% of those infected with TB develop an active case.[2] Active TB, however, can be quite serious 
not only because it is contagious but also because the bacteria cause tissue 
death in the infected organs. The driver here had reportedly been asymptomatic 
for many years before his TB became active.
            
The passengers were tested for the disease after learning of the driver’s 
diagnosis, and several tested positive for latent TB. These passengers 
subsequently sued the driver and bus company, asserting that they were 
negligently exposed to the disease as a result of being confined on the bus with 
the infected driver during the band trip. The bus company notified Lancer 
Insurance Company, its insurance carrier, but Lancer refused to defend the 
claim, maintaining that such claims were not covered under the policy. Left to 
defend itself, the bus company proceeded to trial where a jury found it and the 
driver liable and awarded collectively over $5 million in damages to the 
passengers who had contracted the disease.
            
After judgment in the passengers’ tort suit, the bus 
company and driver sued Lancer, asserting contractual and 
extra-contractual claims and seeking a declaration of rights under the business 
auto policy. The passengers, now judgment creditors of the insureds, intervened, also seeking a declaration of Lancer’s 
obligations under the policy.
            
Lancer and the passengers filed summary judgment motions. Lancer’s motion 
sought to establish that the passengers’ underlying claims and judgment required 
neither a defense nor indemnification under the terms of the business auto 
policy, while the passengers’ motion sought to establish Lancer’s obligation to 
indemnify the insureds for the passengers’ underlying 
tort judgment. The bus company and its driver, who as the insureds had initiated the suit, did not seek summary 
judgment.
            
The trial court granted the passengers’ motion and denied Lancer’s. It 
then severed the passengers’ claims from the remainder of the case, allowing 
Lancer to appeal the passengers’ favorable summary judgment, which Lancer 
did.
            
The court of appeals reversed the summary judgment. 308 S.W.3d 35 (Tex. 
App.—San Antonio 2009). While agreeing that the policy might provide coverage 
for communicable diseases transmitted during the bus trip, the court of appeals 
nevertheless reversed the passengers’ summary judgment because there was no 
conclusive proof that the passengers’[3] infections had occurred on the bus. 
Id. at 44–47. The court remanded the case to the trial court to resolve 
this factual dispute about where the infected passengers contracted the disease 
which would apparently then resolve whether Lancer had an obligation to 
indemnify its insureds. Id. 
at 47. Unsatisfied with the court of appeals’ decision, Lancer appealed 
to this Court, and we granted its petition for review to consider the novel 
coverage question.
II
            
Lancer’s business auto policy states that coverage is afforded for 
damages the insured is legally obligated to pay “because of ‘bodily injury’ . . 
. caused by an ‘accident’ and resulting from the ownership, maintenance or use 
of a covered ‘auto.’”[4] The terms accident, auto, and bodily 
injury are defined in the policy, to wit:
A. “Accident” includes continuous or repeated exposure 
to the same conditions resulting in “bodily injury” or “property 
damage.”
 
B. “Auto” means a land motor vehicle . . . designed for 
travel on public roads . . . .
 
C. “Bodily injury” means bodily injury, sickness or 
disease sustained by a person including death resulting from any of 
these.
 
Lancer concedes that the bus is a 
covered “auto,” the passengers’ claims involve an accident, and tuberculosis is 
a “bodily injury” under the policy’s definitions. Lancer maintains, however, 
that the accident and the injuries did not result from the use of the bus, as 
the policy requires, but rather from other causes, such as the use of a 
contagious bus driver. Lancer submits that the risk of being exposed to an 
infectious individual and contracting a disease is a general liability risk, not 
an auto liability risk, even when the infectious individual happens to be the 
vehicle’s driver. In short, Lancer contends that the nexus between the 
passengers’ injuries and the bus’s use is insufficient to invoke the policy’s 
coverage.
            
The bus company and passengers respond that the policy generally provides 
coverage for passenger injuries so long as the bus is being used as a bus. They 
submit that the term “use” is broadly defined in the case law to extend coverage 
well beyond vehicular accidents or collisions. See, 
e.g., State Farm Mut. Auto. 
Ins. Co. v. Pan Am. Ins. Co., 437 S.W.2d 542, 545 (Tex. 1969) (defining 
“use” as a “general catchall” that includes “all proper uses of the vehicle not 
falling within other terms of definition such as ownership and maintenance”). 
They maintain that because the bus was being used to transport the passengers at 
the time of their injury that a sufficient nexus exists between that use and 
their injuries.
            
Although the parties disagree about whether the bus’s use caused the 
injuries, they agree that Mid-Century Insurance Co. of Texas v. Lindsey 
is the place to begin the analysis of that question. 997 
S.W.2d 153 (Tex. 1999). Lindsey involved a similar coverage 
question concerning the requisite causal relationship that should exist between 
the injury-producing accident and the insured’s use of a covered motor vehicle. 
On the question of liability associated with such use, we said that a covered 
liability under the auto policy required some causal connection “between the 
accident or injury and the use of the motor vehicle.” Id. at 156. In analyzing that connection, we proposed 
a three-part test, which we borrowed from two respected treatises on insurance 
law. Id. at 157 (quoting 8 Couch 
on Insurance 3d § 119.37, at 119–56 (1997) and citing 6B John A. Appleman, Insurance Law and Practice 
§ 4317, at 367–369 (Buckley ed. 1979)). Applying that test, we concluded 
that the accident in Lindsey arose out of the use of the vehicle and was 
therefore a covered event. Lindsey, 997 S.W.2d at 
164.
            
Lancer submits, however, that the Lindsey test must be applied in 
light of policy language and that its policy requires a more direct causal 
connection between the injury-producing event and the vehicle’s use than did the 
policy in Lindsey. Lancer’s business auto policy provides coverage for 
accidental injuries “resulting from the ownership, maintenance or use of a 
covered ‘auto,’” whereas the personal auto policy in Lindsey provided 
coverage for accidental injuries “aris[ing] out of the ownership, maintenance, or use of the . . . 
motor vehicle.” Lancer argues that the phrase “arising out of” implies broader 
coverage than the phrase “resulting from.”
            
The phrase “arising out of” means “originating from, having its origin 
in, growing out of or flowing from.” Am. States Ins. Co. v. 
Bailey, 133 F.3d 363, 370 (5th Cir. 1998). We have not decided 
whether policies that insure against injuries “resulting from” the use of an 
auto are significantly different from those that insure against injuries 
“arising out of” the use. See Nat’l Union Fire Ins. Co. v. Merchs. Fast Motor Lines, Inc., 939 S.W.2d 139, 142 n.1. (Tex. 1997) (per curiam) (expressing no opinion 
whether “resulting from” requires a higher degree of causation than “arising out 
of”).
            
Some jurisdictions find no significant distinction between the two 
phrases. See, e.g., Mork Clinic v. Fireman’s Fund 
Ins. Co., 575 N.W.2d 598, 602 (Minn. Ct. App. 1998) (“‘Resulting from’ has 
the same ordinary and plain meaning as ‘arising out of.’” (quoting American 
Heritage College Dictionary 73 (3d ed. 1997) (definition of “arise” 
includes “result”)); see also Pension Trust Fund v. Fed. Ins. Co., 307 F.3d 944, 952 (9th 
Cir. 2002); Heritage Mut. Ins. Co. v. State Farm Mut. Auto. 
Ins. Co., 657 So. 2d 925, 927 (Fla. Dist. Ct. App. 1995); 
St. Paul Fire & Marine Ins. Co. v. Antel 
Corp., 899 N.E.2d 1167, 1175 (Ill. App. Ct. 2008); Dupuy v. Gonday, 450 
So. 2d 1014, 1016 (La. Ct. App. 1984). Others 
suggest that “resulting from” requires a narrower or more direct causation 
analysis. See Ohio Cas. 
Grp. of Ins. Cos. v. Bakaric, 513 A.2d 462, 465–66 (Pa. Supr. Ct. 1986) 
(stating that “resulting from” was narrower than the standard “arising out of” 
language); State Farm Mut. Auto. Ins. Co. v. Flanary, 879 S.W.2d 720, 723 (Mo. Ct. App 1994) 
(equating “resulting from” to “caused by” rather than “arising out of”). The 
treatises generally equate the two phrases. Couch on Insurance states 
that both phrases are understood to mean “flowing from” or “having its origin 
in.” 7 Lee R. Russ & Thomas F. 
Segalla, Couch on 
Insurance § 101.52 (3d ed. 1997). Another commentary makes no distinction 
between the two phrases, stating that a policy “written to apply to injuries 
‘caused by’ a particular event should be applied more narrowly than [one] 
written to apply to injuries ‘resulting from’ or ‘arising out of’ a particular 
event.” 2 Allan D. Windt, Insurance 
Claims and Disputes § 6.3 at 6-93 (5th ed. 2007); cf. Utica Nat’l Ins. 
Co. of Tex. v. Am. Indem. Co., 141 S.W.3d 198, 203 
(Tex. 2004) (distinguishing between “arising out of” and “due to” when used in 
parallel exclusions in the policy). Like these authorities, we see no 
significant distinction between the two phrases and conclude that the analysis 
is the same whether the policy requires that an injury “result from” or “arise 
out of” the covered auto’s use. With that in mind, we return to our previous 
decision in Lindsey.
III
            
The injury-producing event in Lindsey concerned the accidental 
discharge of a shotgun, which at the time was resting in a mounted gun rack 
above a pickup’s rear window. Lindsey, 997 S.W.2d at 
154. The accident occurred when a young boy, who had been fishing with 
his parents, returned to the family’s truck to retrieve his coveralls. Finding 
the truck locked, the boy climbed into the bed and attempted to enter the cab 
through the truck’s sliding rear window. While attempting this, he accidentally 
bumped the gun rack and loaded shotgun, which discharged striking Richard 
Lindsey, who was seated in his mother’s car parked nearby.
            
Lindsey sued the boy’s parents and settled for the policy limits on their 
truck. The settlement did not cover Lindsey’s damages, and so he also sought to 
collect the limits of the uninsured/underinsured motorists coverage of his mother’s policy. His mother’s 
insurance carrier, Mid-Century, denied the claim.
            
Mid-Century argued that there was no coverage under the policy because 
there had been no physical contact between the two vehicles. We rejected that 
argument, concluding that the policy’s insuring agreement did not cover only 
auto collisions but also other accidents connected to the auto’s use. Id. at 156. Turning to the question of liability 
associated with such use, we stated that a covered liability under the auto 
policy required some causal connection “between the accident or injury and the 
use of the motor vehicle,” and in analyzing that connection, we proposed a 
three-part test. Id. Although not an absolute test, we recommended the 
following three factors as “helpful in focusing the analysis” of the coverage 
question:
(1) the accident must have 
arisen out of the inherent nature of the automobile, as 
such,
 
(2) the accident must have 
arisen within the natural territorial limits of an automobile, and the actual 
use must not have terminated,
 
(3) the automobile must not 
merely contribute to cause the condition which produces the injury, but must 
itself produce the injury.
 
Id. at 157 (quoting 8 Couch on Insurance 3d § 119.37, at 
119-56 (1997); accord, 6B John A. 
Appleman, Insurance Law and Practice § 4317, at 367–69 (Buckley ed. 
1979)).
            
The passengers contend that the accident here satisfies Lindsey’s 
three part test. The passengers submit that they were exposed to tuberculosis 
while inside the bus being transported to their destination, thus satisfying the 
first two factors: the accident occurred within the bus’s “natural territorial 
limits” and arose out of the bus’s “inherent nature” as a bus, that is, as a 
means of transportation. Regarding the third factor, the passengers argue that 
the use of the bus caused their tuberculosis infection in two ways. First, they 
submit that the bus’s closed environment required them to breathe the bacteria 
expelled by the infected driver for hours, causing them to contract the disease. 
Second, the passengers argue that the bus’s air-conditioning system exposed them 
to the bacteria by recirculating the contaminated air 
throughout the bus.
            
But Lancer maintains that the bus’s connection to the infectious disease 
is too remote or minimal to invoke coverage. Similarly, an amicus[5] submits that the bus and its air 
conditioning system merely furnished the condition for, rather than caused, the 
accident and that it was the unhealthy driver, not the bus, 
that was instrumental in causing the injury. The amicus concludes that 
the parties to an automobile liability policy reasonably expect the policy to 
cover against the risk of automobile accidents and that the injury-producing 
event in this case—negligent exposure to a communicable disease—is not an 
“automobile accident” in any sense of that phrase.
            
For liability to “result from” the use of a motor vehicle, there must be a sufficient nexus between its use as 
a motor vehicle and the accident or injury. Lindsey, 997 S.W.2d at 157. According to Lindsey’s third 
factor, the insured vehicle must not merely contribute to cause the condition 
which produces the injury, but must itself produce the injury. Id. This 
factor is “especially troublesome because of the difficulty in many 
circumstances of deciding what role a vehicle, as opposed to other things, 
played in producing a particular injury[.]” Id. We cautioned in 
Lindsey, however, that not every injury capable of connection to the use 
of an auto is a covered use.
            
For example, a drive-by shooting involves a use of a vehicle, but its use 
is incidental; “the vehicle’s role in the occurrence is minimal as compared with 
the shooter’s.” Id. at 
158. Similarly, liability for an injury resulting from an assault 
committed in an automobile is generally held to be outside coverage.[6] When the vehicle is merely the “situs of an incident that could have occurred anywhere,” the 
causal connection to the vehicle’s use is typically too remote to invoke 
coverage. Id.; accord LeLeaux v. Hamshire-Fannett Indep. Sch. Dist., 835 S.W.2d 49, 51 (Tex. 
1992).
            
Lindsey indicates then that to invoke coverage the vehicle’s use 
must be a producing cause or cause in fact of the accidental injury. Cf. 
Utica Nat'l Ins. Co., 141 S.W.3d at 203 (suggesting a “but for” causal 
analysis). To be a producing cause of harm, the use must have been a substantial 
factor in bring about the injury, which would not otherwise have occurred. W. 
Invs., Inc. v. Urena, 
162 S.W.3d 547, 551 (Tex. 2005). And when the vehicle merely furnishes a place 
for the accident or injury to occur, it is not a substantial factor, and the 
causal link is insufficient to invoke coverage. See id. (noting that cause in fact does not exist when act merely 
furnishes a condition making injury possible).
            
The previously mentioned assault cases provide perhaps the closest 
analogy to our present circumstances. Generally, the courts have held that an 
auto policy does not cover injuries resulting from an assault that occurs in a 
motor vehicle.[7] The California Court of Appeals decision 
in American National Property & Casualty Co. v. Julie R. is an 
example. 90 Cal. Rptr. 2d 119 (Cal. 
App. 1999).
            
In that case, a passenger sued a shuttle service operator, alleging 
sexual assault by one of the operator’s drivers. The business auto policy, like 
our present policy, provided coverage for “‘bodily injury . . . result[ing] from the ownership, maintenance, or use of the 
vehicle.’” Id. at 121. The passenger was driven 
to a secluded location, where the driver parked the car next to a fence in such 
a way as to prevent her escape. Id. at 120. The 
court concluded the vehicle’s use had to be a “substantial factor” in the 
injury, and that its mere use as transportation to the scene of the injury did 
“not establish a sufficient causal connection between the ‘use’ and the injury.” 
Id. at 123. The court acknowledged that the 
driver’s “placement of his vehicle against the fence increased the danger that 
he would be successful in carrying out his intent to rape” his passenger, but 
the court concluded that the rape “‘originated from, grew out of [and] flowed 
from’ [the driver’s] intent to rape [his passenger] and his actions with his 
body to achieve that end,” not from the use of the vehicle. Id. at 124. Thus, the vehicle’s “use was a 
circumstance accompanying the rape, not a . . . substantial factor in [the 
passenger’s] injury.” Id.
            
In other assault cases, courts have found the role of the vehicle to be 
merely the situs for the injury-producing act. See, 
e.g., Payne v. Twiggs Co. Sch. Dist., 496 S.E.2d 690, 692 (Ga. 1998) 
(coverage did not extend to injuries that student sustained when attacked on 
school bus, under policy insuring against any bodily injury “caused by an 
accident and resulting from the ownership, maintenance, or use of a [school 
bus]”); SCR Med. Transp. Servs., Inc. v. 
Browne, 781 N.E.2d 564 (Ill. App. Ct. 2002) (sexual assault committed by 
driver for medical transportation services provider was not accident arising out 
of use of insured vehicle); State Farm Fire & Cas. Co. v. Aytes, 503 S.E.2d 
744 (S.C. 1998) (injury from shooting after abduction did not arise from “use” 
of automobile even though car was used to abduct woman to location of shooting); 
Whitmire v. Mid-Continent Cas. Co., 928 P.2d 
959 (Okla. Civ. App. 1996) (same, except abductor tried to immolate victim); 
but see Dotts v. Taressa, 390 S.E.2d 568 (W.Va. 1990) (because of 
elevated duty of care owed to passengers by common carriers, assault of 
passenger by employee would be construed as arising out of use of vehicle). In 
these cases, the injury-producing event did not result from the act of 
transportation or, as we said in Lindsey, the “vehicle qua 
vehicle” but rather from person-to-person exchanges, which only incidentally 
occurred within the locational setting of a motor 
vehicle. See Lindsey, 997 S.W.2d at 
156.
            
The bus company argues, however, that the Fifth Circuit’s decision in 
Lincoln General Insurance Co. v. Aisha’s Learning Center is the more 
analogous case. 468 F.3d 857 (5th Cir. 2006). There, 
the driver of a van, used to transport children from their homes to a day care 
center, failed to unload one of the children upon arriving at the center. The 
two-year-old child left behind was trapped in the parked van for approximately 
seven hours during the heat of the day. The court concluded that the van caused, 
rather than merely contributed to, the conditions that produced the injury 
because of the inherent nature of a closed vehicle to trap 
heat:
 
Le’Yazmine was injured because she was left in a hot, unventilated 
vehicle by the driver. The vehicle was not merely the situs of the injury, but a producing cause. Unfortunately, 
the danger of leaving children in locked vehicles during extreme weather 
conditions is well known; it is a danger inherent in the manner in which 
automobiles trap heat. The same dangers are not found in classrooms or parks. 
Thus, “but for” the use of the van to transport Le’Yazmine, she would not have been 
injured.
 
 
Id. at 860. Similarly, the bus company argues 
that the physical characteristics of the bus, its closed environment and 
ventilation system, caused the passengers’ injuries.
            
The bus here, however, was not as instrumental in producing the 
passengers’ injuries as the van in Lincoln General. The bus did not 
generate the tuberculosis bacteria or make it more virulent. As the Fifth Circuit observed in Lincoln General, “[w]here a 
vehicle is a mere situs of injury, fungible with any 
other situs, it is not being ‘used.’” 
Id. at 860 n.2. Here, the bus was the mere 
physical situs of the exposure to the infected person, 
which could have occurred anywhere. See Lindsey, 997 S.W.2d at 156 
(noting that if the vehicle is merely the “locational 
setting for an injury, the injury does not arise out of any use of the 
vehicle”); see also State Farm Mut. Ins. Co. v. 
Peck, 900 S.W.2d 910, 913 (Tex. App.—Amarillo 1995, no writ) (concluding 
that passenger bitten by dog while riding in vehicle was not involved in an 
“auto accident” because the only nexus between the dog-biting accident and the 
vehicle was that the passenger was sitting in it). Exposure to the disease might 
have occurred in any number of other enclosed, air-conditioned locations, such 
as a classroom, theater or restaurant because the instrumentality causing the 
disease is the infected person, not the infected person’s surroundings or the 
act of using the covered vehicle. We conclude then that the exposure of 
passengers to a communicable disease was not a risk covered by Lancer’s business 
auto policy because the injury resulted from causes other than the use of the 
covered vehicle. The bus itself was not a substantial factor in causing the 
passenger’s injuries.
IV
            
Lancer also complains that the court of appeals erred in not ruling on 
the issue of its duty to defend under the auto policy. The duties to defend and 
to indemnify are typically separate and distinct obligations. King v. Dall. Fire Ins. Co., 85 S.W.3d 185, 187 
(Tex. 2002). Lancer’s motion in the trial court sought summary 
judgment that it did not owe either duty under the circumstances of this case. 
The trial court denied Lancer’s motion. The passengers’ motion sought summary 
judgment that Lancer had breached both duties, but the trial court granted their 
motion only as to the indemnity issue. The trial court subsequently severed the 
indemnity claim from the remainder of the case, making the court’s summary 
judgment on indemnity final for purposes of appeal.
            
Because the passengers’ motion, like its own, sought summary judgment on 
both indemnity and defense, Lancer submits that the court of appeals had both 
issues before it and should have reviewed the duty-to-defend issue, even though 
the trial court’s summary judgment did not rule on the issue. We 
disagree.
            
The trial court’s only ruling on the issue was to deny Lancer’s motion 
for summary judgment. The denial of summary judgment is an interlocutory order 
over which an appellate court typically lacks jurisdiction absent some special 
statutory grant. See Lehmann v. Har-Con Corp., 
39 S.W.3d 191, 195 (Tex. 2001) (noting the general rule that appeal may be taken 
only from final judgments). Lancer submits, however, that no appellate 
jurisdictional problem exists in this case because both sides moved for summary 
judgment on the issue. When opposing parties file counter motions for summary 
judgment and the trial court grants one motion and denies the other, the 
appellate court has jurisdiction to determine all questions presented in the 
opposing motions and to render the judgment the trial court should have 
rendered. Progressive Cnty. Mut. Ins. 
Co. v. Kelley, 284 S.W.3d 805, 806 (Tex. 2009) 
(per curiam). This circumstance is 
an exception to the general rule prohibiting the appeal of an order denying 
summary judgment. See generally Timothy Patton, Summary Judgments in Texas, § 
8.01[3][b] (3d ed. 2010).
            
That exception, however, has no application here because the passengers 
had no right to move for summary judgment on the issue. The duty to defend is 
owed to insureds, not to third-party judgment 
creditors of the insureds. The passengers therefore 
had no justiciable interest in Lancer’s alleged breach 
of that duty, and the bus company, which did have a justiciable interest in the matter, did not move for summary 
judgment. The final judgment here does not include that issue, and it is not 
part of this appeal. The court of appeals therefore did not err in failing to 
address the issue as the matter remains in the trial court as part of the 
severed action.
* * * * 
*
            
We conclude that the transmission of a communicable disease from a bus 
driver to his passengers was not a risk assumed by the insurance carrier under 
this business auto policy because the passengers’ injuries did not result from 
the vehicle’s use but rather from the bus company’s use of an unhealthy driver. 
The bus, itself, in its capacity as a mode of transportation, did not produce, 
and was not a substantial factor in producing, the passengers’ injuries. The 
court of appeals’ judgment is accordingly reversed and judgment rendered that 
the passengers, bus company, and driver take nothing on 
their indemnity claim against the insurance carrier.
 
                                                                                                                                                                                    
____________________________
                                                                                                                                                                                    
David M. Medina
                                                                                                                                                                                    
Justice
 
Opinion Delivered: July 1, 2011







[1] See 
generally Centers for Disease Control and Prevention at http://www.cdc.gov/tb/ (last visited on June 28, 
2011).

[2] Vinay Kumar, Abul K. Abbas, Nelson Fausto 
& Richard N. Mitchell, Robbins Basic Pathology pp. 516–22 (8th 
ed. 2007).

[3] The 
court of appeals consolidated the appeal of another passenger, John A. Vela, 
Jr., who, unlike the other passengers, had yet to obtain a judgment against the 
bus company. Vela had, however, intervened in the coverage suit and obtained a 
favorable summary judgment and severance order, like the other passengers. The 
court of appeals concluded that Vela had no justiciable interest in the underlying coverage action and 
therefore no basis to intervene. 308 S.W.3d at 48. It 
accordingly reversed the summary judgment in his favor and dismissed his suit in 
intervention. Vela has not appealed that judgment.

[4] The 
policy described its “Liability Coverage” in section II(A) as follows:
 
We will 
pay all sums an “insured” legally must pay as damages because of “bodily injury” 
or “property damage” to which this insurance applies, caused by an “accident” 
and resulting from the ownership, maintenance or use of a covered 
“auto.”

[5] 
Property Casualty Insurers Association of America, a trade association 
representing more than 1,000 property casualty insurance companies doing 
business throughout the nation, prepared an amicus brief in support of the 
Petitioner.

[6] See 
generally, Larry D. Scheafer, Annotation, 
Automobile Liability Insurance: What are Accidents or Injuries “Arising Out 
of Ownership, Maintenance, or Use” of Insured Vehicle, 15 A.L.R. 4th 10, § 
9(e) (1982) (compiling cases); see also 2 Jeffery W. Stempel, Stempel on Insurance 
Contracts § 22.12[D] (3d ed. 2008) (discussing the auto use requirement); 
1 Rowland H. Long, The Law of Liability 
Insurance, § 4.16 (2006) (discussing causal relation between use and 
accident).

[7] 
See n.6 supra.