PINE OAK BUILDERS,
INC., Petitioner,

v.

GREAT AMERICAN LLOYDS
INSURANCE COMPANY,
Respondent.

No. 06–0867.

Supreme Court of Texas.

Argued Feb. 7, 2008.

Decided Feb. 13, 2009.

Rehearing Denied May 1, 2009.

Joseph H. Pedigo, Joseph S. Yardas Jr., for petitioner.

Christopher Lee Burke, Miller & Burke, PC, San Antonio, Jennifer Bruch Hogan, Richard P. Hogan Jr., Matthew E. Coveler, Hogan & Hogan, L.L.P., Houston, for respondent.

Justice WILLETT delivered the opinion of the Court.

Upon being sued by five different homeowners alleging various construction defects, Pine Oak Builders, Inc. made written demand on its insurers, including Great American Lloyds Insurance Co., for a defense. When the insurers denied any duty to defend, Pine Oak sued for breach of the insurers' defense obligations. This coverage dispute revisits issues addressed in three of our recent cases, which decide some matters in Pine Oak's favor and some in Great American's favor.

## I. Background

Great American issued occurrence-based commercial general liability (CGL) policies to Pine Oak, a homebuilder, covering April 1993 to April 2001. Another insurer, Mid–Continent Casualty Co., issued CGL policies covering April 2001 to April 2003. Between February 2002 and March 2003, five homeowners sued Pine Oak, alleging their homes suffered water damage be-

cause of defective construction. Four of the suits alleged improper installation of a synthetic stucco product known as an Exterior Insulation and Finish System (EIFS). The other suit, the Glass suit, alleged water damage due to improper design and construction of columns and a balcony.

The insurers denied Pine Oak's request for a defense in the homeowner suits, prompting Pine Oak to file this suit. The insurers in turn sought a declaratory judgment that they had no obligation to defend or indemnify Pine Oak. Both sides sought summary judgment—Pine Oak arguing its right to a defense and damages, and Great American arguing the policies did not cover the claims in the underlying suits. The trial court granted summary judgment for the insurers on all issues.

The court of appeals [1] affirmed the summary judgment for Mid–Continent because of an EIFS exclusion found in Mid–Continent's policies, and Pine Oak does not appeal this ruling. As for Great American, the court affirmed the summary judgment relating to the Glass suit, reasoning that it only alleged defective work by Pine Oak that was excluded under the policies' "your work" exclusion. However, the court concluded Great American had a duty to defend the four other homeowner suits, though Pine Oak could not recover statutory damages under the Prompt Payment of Claims statute [2] for Great American's failure to defend the suits. We granted the parties' cross-petitions. [3]

## II. Discussion

### A. *Lamar Homes*—Whether Faulty Workmanship Claims Are Covered and Whether Insurance Code Article 21.55 Applies

■ Great American urges us to hold that Pine Oak's faulty-workmanship claims do not allege "property damage" caused by an "occurrence" under the terms of the policies. This argument is foreclosed by *Lamar Homes, Inc. v. Mid–Continent Casualty Co.*, where we held that a claim of faulty workmanship against a homebuilder was a claim for property damage caused by an occurrence under a CGL policy. [4] The relevant policy language in the Great American policies is identical to the policy language we construed in *Lamar Homes.* [5]

■ Pine Oak asks us to reverse the court of appeals' holding that the Prompt Payment of Claims statute does not apply to an insurer's breach of its duty to defend under a liability policy. We agree, as *Lamar Homes* again controls, making clear the statute does apply to such situations. [6]

### B. *Don's Building Supply*—What Triggers Coverage Under an Occurrence–Based CGL Policy?

■ The underlying suits concern homes built in 1996 and 1997. Great American's policies, consecutive one-year policies, cover the period from April 5, 1993 to April 5, 2001. On the question of whether Great American's policies were triggered under facts alleged in the underlying suits, the court of appeals followed the "exposure rule" for determining whether a property-damage claim is covered under an occurrence-based CGL policy. [7] Great American urges us to adopt the

---

1. —— S.W.3d ——.

2. Tex. Ins.Code §§ 542.051–.061 (previously codified as Tex. Ins.Code art. 21.55).

3. 50 Tex. Sup.Ct. J. 1073–74 (Aug. 31, 2007).

4. 242 S.W.3d 1, 4–5, 16 (Tex.2007).

5. Great American's briefing concedes that the occurrence and property-damage issues presented in this case are identical to the issues then pending in *Lamar Homes*.

6. *Lamar Homes*, 242 S.W.3d at 5, 20.

7. —— S.W.3d at ——.

"manifestation rule" for deciding whether a property-damage claim is covered.

We rejected both of these rules in *Don's Building Supply, Inc. v. OneBeacon Insurance Co.,*[8] another case involving insurance coverage of EIFS claims. We adopted instead the actual-injury rule, under which property damage occurs during the policy period if "actual physical damage to the property occurred" during the policy period.[9] As we explained in that case, "the key date is when injury happens, not when someone happens upon it"—that is, the focus should be on "when damage comes to pass, not when damage comes to light."[10] The policy language construed in *Don's Building Supply* is identical to the relevant language in Great American's policies.[11] So property damage occurred under the Great American policies "when a home that is the subject of an underlying suit suffered wood rot or other physical damage."[12] On remand, the trial court should apply the actual-injury rule to any remaining disputes about whether the property-damage claims fall within the terms of the Great American policies.

## C. *GuideOne Elite*—Extrinsic Evidence and the Eight–Corners Rule

■ The final issue is whether evidence extrinsic to the eight corners of the policy and the underlying lawsuit may be used to establish the insurer's duty to defend. Exclusion *"1"* of the CGL policy removes coverage for property damage to the insured's completed work. This exclusion contains an exception "if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor." As *Lamar Homes* explained, coverage therefore depends in part on whether the alleged defective work was performed by Pine Oak or a subcontractor.[13]

In four of the underlying suits against Pine Oak, the petitions expressly alleged defective work by one or more subcontractors. In the Glass case, the petition contains no allegations of defective work by a subcontractor. The petition asserted causes of action for breach of contract and warranty, violation of the Residential Construction Liability Act,[14] and negligence, based on Pine Oak's alleged failure to perform its work in a good and workmanlike

8. 267 S.W.3d 20 (Tex.2008).

9. *Id.* at 24.

10. *Id.* at 22.

11. The Great American policies provided:
We will pay those sums that the Insured becomes legally obligated to pay as damages because of ... "property damage" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages.
. . . .
This insurance applies to ... "property damage" only if ... the ... "property damage" is caused by an "occurrence" ... and ... the ... "property damage" occurs during the policy period.
. . . .

"Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.
. . . .
"Property damage" means ... physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it.

12. *Don's Bldg.,* 267 S.W.3d at 24.

13. *See Lamar Homes, Inc. v. Mid–Continent Cas. Co.,* 242 S.W.3d 1, 11 (Tex.2007) (describing identical policy language).

14. TEX. PROP.CODE §§ 27.001–.007.

manner and a failure to make requested repairs.

In this coverage suit, Pine Oak submitted evidence that the defective work alleged in the Glass case was performed by subcontractors. Based on this extrinsic evidence, Pine Oak contends Great American had a duty to defend Pine Oak in the Glass case.

■ Under the eight-corners rule, the duty to defend is determined by the claims alleged in the petition and the coverage provided in the policy.[15] "If a petition does not allege facts within the scope of coverage, an insurer is not legally required to defend a suit against its insured." [16]

In *GuideOne Elite Insurance Co. v. Fielder Road Baptist Church,* issued six days before the court of appeals' decision in this case, the plaintiff in an underlying suit alleged that an employee of the insured had sexually abused her.[17] The insurer brought a declaratory judgment action to determine coverage.[18] The underlying third-party petition alleged that the abuse occurred from 1992 to 1994.[19] The insurer sought to introduce extrinsic evidence that the employee ceased working for the insured on December 15, 1992, before the insurance policy took effect.[20] We stated:

> Although this Court has never expressly recognized an exception to the eight-corners rule, other courts have. Generally, these courts have drawn a very narrow exception, permitting the use of extrinsic evidence only when relevant to an independent and discrete coverage issue, not touching on the merits of the underlying third-party claim.[21]

Without recognizing an exception to the eight-corners rule, we held that any such exception would not extend to evidence that was relevant to both insurance coverage and the factual merits of the case as alleged by the third-party plaintiff.[22] We further reasoned that

> the extrinsic evidence here concerning Evans' employment directly contradicts the plaintiff's allegations that the Church employed Evans during the relevant coverage period, an allegation material, at least in part, to the merits of the third-party claim. Under the eight-corners rule, the allegation's truth was not a matter for debate in a declaratory judgment action between insurer and insured.[23]

The extrinsic fact Pine Oak seeks to introduce in this coverage action contradicts the facts alleged in the Glass suit. The petition in the Glass suit alleges that Pine Oak agreed to construct the plaintiffs' house, that Pine Oak alone "constructed columns that provided inadequate support," "failed to properly seal seams," "negligently attempted to correct" a problem with the balcony, failed "to perform the work in a good and workmanlike manner," and failed "to make the repairs de-

---

**15.** *See Nat'l Union Fire Ins. Co. of Pittsburgh, PA, v. Merchs. Fast Motor Lines, Inc.,* 939 S.W.2d 139, 141 (Tex.1997); *Heyden Newport Chem. Corp. v. S. Gen. Ins. Co.,* 387 S.W.2d 22, 26 (Tex.1965).

**16.** *Nat'l Union,* 939 S.W.2d at 141.

**17.** 197 S.W.3d 305, 307 (Tex.2006).

**18.** *Id.*

**19.** *Id.*

**20.** *Id.*

**21.** *Id.* at 308 (footnotes omitted).

**22.** *Id.* at 309.

**23.** *Id.* at 310. Our analysis in *GuideOne Elite* did not consider whether an exception to the eight-corners rule might exist where the parties to the underlying suit collude to make false allegations that would invoke the insurer's duty to defend, because the record did not indicate collusion. *Id.* at 311.

scribed above." These claims of faulty workmanship by Pine Oak are excluded from coverage under the "your work" exclusion. Faulty workmanship by a subcontractor that might fall under the subcontractor exception to the "your work" exclusion is not mentioned in the petition. "If the petition only alleges facts excluded by the policy, the insurer is not required to defend." [24]

 Pine Oak urges that the references in the Glass petition to Pine Oak as the culpable party can be read as either Pine Oak or one of its subcontractors. Unlike the petitions in the other four suits, the petition in the Glass case does not accuse any subcontractor—a separate legal entity—of defective work or other legally actionable conduct, nor does it allege that Pine Oak is liable under any theory for the conduct or work of a subcontractor. It does not allege negligent supervision of a subcontractor or any other third party. It alleges that Pine Oak alone is liable for its own actionable conduct. "We will not read facts into the pleadings.... Nor will we look outside the pleadings, or imagine factual scenarios which might trigger coverage." [25] Instead, "an insurer is entitled to rely solely on the factual allegations contained in the petition in conjunction with the terms of the policy to determine whether it has a duty to defend." [26]

Pine Oak views *GuideOne Elite* as distinguishable because in that case the insurer was attempting to introduce extrinsic evidence to *limit* its duty to defend, whereas here Pine Oak, the insured, offered extrinsic evidence to *trigger* the duty to defend. This distinction is not legally significant.

 In deciding the duty to defend, the court should not consider extrinsic evidence from either the insurer or the insured that contradicts the allegations of the underlying petition. The duty to defend depends on the language of the policy setting out the contractual agreement between insurer and insured. [27] A defense of third-party claims provided by the insurer is a valuable benefit granted to the insured by the policy, separate from the duty to indemnify. [28] But the insurer's duty to defend is limited to those claims actually asserted in an underlying suit. Great American's policy provides that it shall "have the right and duty to defend any 'suit' seeking" damages for bodily injury or property damage covered by the policy. "Suit" is defined as "a civil proceeding in which damages because of [property damage or other injuries] to which this insurance applies are alleged." The policy imposes no duty to defend a claim that might have been alleged but was not, or a claim that more closely tracks the true factual

**24.** *Fid. & Guar. Ins. Underwriters, Inc. v. McManus,* 633 S.W.2d 787, 788 (Tex.1982).

**25.** *Nat'l Union Fire Ins. Co. of Pittsburgh, PA, v. Merchs. Fast Motor Lines, Inc.,* 939 S.W.2d 139, 142 (Tex.1997).

**26.** *Trinity Universal Ins. Co. v. Cowan,* 945 S.W.2d 819, 829 (Tex.1997).

**27.** *See Forbau v. Aetna Life Ins. Co.,* 876 S.W.2d 132, 133 (Tex.1994) ("Interpretation of insurance contracts in Texas is governed by the same rules as interpretation of other contracts. When construing a contract, the court's primary concern is to give effect to the written expression of the parties' intent." (citations omitted)).

**28.** *See Cowan,* 945 S.W.2d at 821–22 (noting that "the duty to defend and the duty to indemnify by an insurer are distinct and separate duties."); *Heyden Newport Chem. Corp. v. S. Gen. Ins. Co.,* 387 S.W.2d 22, 25 (Tex.1965) (noting that duty to indemnify protects insureds "from payment of damages they may be found legally obligated to pay," while duty to defend "protects the same parties against the expense of any suit seeking damages" covered by the policy).

circumstances surrounding the third-party claimant's injuries but which, for whatever reason, has not been asserted. To hold otherwise would impose a duty on the insurer that is not found in the language of the policy. Such a construction would subject an insurer to common-law and statutory liability for failing to defend the insured against a third-party claim that has not been alleged, despite policy language limiting the duty to defend to claims that have been alleged.

Such a construction would also "conflate the insurer's defense and indemnity duties," since the duty to defend turns on the "factual allegations that potentially support a covered claim," while "the facts actually established in the underlying suit control the duty to indemnify."[29] The duty to defend protects the insured by requiring a legal defense to allegations without regard to whether they are true,[30] but it does not extend to allegations, true or false, that have not been made. Great American's duty to defend was not triggered by the Glass petition in the record before us.

### III. Conclusion

We affirm in part and reverse in part the court of appeals' judgment, and remand the case to the trial court for further proceedings consistent with this opinion.

---

29. *GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church*, 197 S.W.3d 305, 310 (Tex.2006).

30. *See Heyden Newport Chem. Corp.*, 387 S.W.2d at 24 ("We think that in determining the duty of a liability insurance company to defend a lawsuit the allegations of the complainant should be considered in the light of the policy provisions without reference to the truth or falsity of such allegations and without reference to what the parties know or believe the true facts to be, or without reference to a legal determination thereof.").