W. EUGENE DAVIS, Circuit Judge,
dissenting:
I respectfully disagree with my colleagues’ interpretation of the Texas Supreme Court case of Gilbert Texas Construction, L.P. v. Underwriters at Lloyd’s London, 327 S.W.3d 118 (Tex.2010). They read that decision to say that a contract to construct tennis courts carrying with it implied contractual warranties amounts to an “assumption of liability” that is excluded under the contractual liability exclusion of the contractor’s comprehensive general liability (CGL) policy. Because the entire weight of the majority’s decision depends on this interpretation of Gilbert, that decision requires a closer look.
In Gilbert, a building located adjacent to the construction site where the Dallas Area Rapid Transit System (DART) was constructing a rail line was damaged by flooding during an unusually heavy rain. The third party owner of the building, RTR, sued Gilbert, DART’s general contractor, in tort, and for breach of contract as a third party beneficiary to the contract between Gilbert and DART. The tort claim was dismissed on immunity grounds leaving only RTR’s breach of contract *523 claim pending against Gilbert. Gilbert settled with RTR and sought indemnity from its CGL carriers, one of which denied coverage.
In the instant case, the contractor, Ewing, undertook to build tennis courts for a school district, and this work allegedly had defects rendering them unfit for playing tennis.
There is a critical difference between the construction contract executed by Gilbert and the contract executed by Ewing— Gilbert’s contract included the following language that is absent in Ewing’s contract. Paragraph 10(b) of the DART/Gilbert contract provided:
b. The Contractor shall protect from damage all existing improvements and utilities (1) at or near the work site and (2) on adjacent property of a third party ... [and] repair any damage to those facilities, including those that are the property of a third party, resulting from failure to comply with the requirements of this contract or failure to exercise reasonable care in performing the work. If the Contractor fails or refuses to repair the damage promptly, [DART] may have the necessary work performed and charge the cost to the Contractor.
Gilbert, 327 S.W.3d at 122.
The entire focus of the Gilbert court was on whether the obligation assumed by Gilbert in paragraph 10(b) of the DART/Gilbert contract quoted above was excluded under the contractual liability exclusion found at section 2(b) of the policy. This provision excluded property damage “for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.” Id. at 124. In other words, the sole question considered by the Gilbert court was whether the obligation undertaken by Gilbert in paragraph 10(b) of the contract fell within this exclusion, i.e., whether it was “an assumption of liability in a contract or agreement.” Id.
The insured argued that paragraph 10(b) did not fall within the exclusion for one reason: the exclusion only applied in the “limited situation in which the insured has assumed the liability of another such as in a hold harmless or indemnity agreement.” Id. at 125 (emphasis in original). This was a substantial argument based on authorities from Texas courts as well as courts from around the country. However, the Gilbert court disagreed with this argument and accepted the underwriter’s argument that if the policy was designed to only exclude assumption of liability of third persons, it should have said so. The court therefore declined to read the exclusion as only excluding assumptions of liability “of another.” The court concluded that the obligation undertaken by Gilbert to protect from damage improvements on adjacent property, to repair any such damage including that of a third party, and authorizing DART to have the necessary work performed and charge the cost to the contractor if it refused to repair the damage amounted to “an assumption of liability in a contract.”
The court then explained that the obligation Gilbert undertook in paragraph 10(b) was independent of its general contractual obligation so as to qualify as an “assumption of liability”: *524 Gilbert., 327 S.W.3d at 127.[1] In its explanation, the Texas Supreme Court plainly-distinguished between two types of liability Gilbert could have under the construction contract — (i) the liability “it had under general law principles,” and (ii) “liability in excess of what it had under general law principles.” Id. According to the court, only the latter category — “liability in excess of what [a contractor] ha[s] under general law principles” — is contractually “assumed” within the meaning of the contractual liability exclusion. The court further explained that the ordinary contractual obligation “to exercise reasonable care in performing” work under a construction contract is equivalent to the contractor’s duty “under general law principles.” Id. Therefore, according to Gilbert, liability arising out of a violation of that duty, though sounding in contract, is not liability “assumed” by contract for purposes of the exclusion.
*523 The obligation to repair or pay for damage to RTR’s property “resulting from a failure to comply with the requirements of this contract” extends beyond Gilbert’s obligations under general law and incorporates contractual standards to which Gilbert obligated itself.... Thus RTR’s breach of contract claim was founded on an obligation or liability contractually assumed by Gilbert within the meaning of the policy exclusion.
*524 Thus, all Gilbert held was that when the insured affirmatively agreed in paragraph 10(b) to be liable for damages in excess of what it would have been liable for in tort or in contract “under general law” principles, then that liability was “assumed” and excluded. Id.; see also Gilbert, 327 S.W.3d at 134 (“ ‘[W]here the express contract actually adds nothing to the insured’s liability, the contractual liability exclusion clause is not applicable, but where [the] insured’s liability would not exist except for the express contract, the contractual liability clause relieves the insurer of liability.’ ”) (quoting Cagle v. Commercial Standard Ins. Co., 427 S.W.2d 939, 943-44 (Tex.Civ.App. — Austin 1968, no writ)) (emphasis added). The majority’s leap from this modest holding to say that any contractual undertaking to perform a construction contract represents an “assumption of liability” for all breaches of that contract cannot be squared with the court’s careful language discussed above.
My conclusion is supported by the interpretation of the decision by third-party commentators. Gilbert was immediately recognized to be a significant decision, and after it was handed down a number of secondary sources — including reporters, treatises, and a law review — discussed its holding on the contractual liability issue. None have interpreted it as the majority does here, to hold that a contractor’s agreement to perform a construction contract amounts to an “assumption of liability” for its faulty performance of that con *525 tract. All read the case as I do: (1) to reject the insured’s argument that the contractual liability exclusion was limited to the assumption of a third party’s liability, and (2) to find that the liability in Gilbert was “assumed” under that exclusion because, in addition to agreeing to perform its work under the contract, the insured contractor also explicitly agreed to be responsible for the damage to neighboring properties.[2]
Some of these sources expressly reference the court’s reasoning quoted above concerning “obligations under ‘general law principles.’ ” They interpret it as I do, to explain that the liability in Gilbert was found to be “assumed” because Gilbert undertook an additional liability to pay for damages to a third party’s structures resulting from its malperformance of the contract, in addition to the duties it already owed in contract and tort under “general law principles.”[3] Again, no one interpreted this case as the majority does here, to hold that an “assumption of liability” is inherent in every agreement to perform a construction contract.
Finally, the majority’s expansion of the contractual liability exclusion is apparently animated by the belief that unless coverage is excluded in this case as a contractually assumed liability, the CGL policy will act as a performance bond to cover all instances of the contractor’s faulty workmanship. This concern that a CGL policy *526 should not operate as a performance bond for the contractor has also been expressed by the Texas Supreme Court. See Lamar Homes, Inc. v. Mid-Continent Cas. Co., 242 S.W.3d 1, 10 (Tex.2007) (“More often, however, faulty workmanship will be excluded from coverage by specific exclusions because that is the CGL’s structure.”). Although this concern does not justify the majority’s unduly expansive reading of Gilbert, I understand and share their concern. However, this concern is adequately addressed by other policy provisions that make the majority’s troublesome expansion of the contractual liability exclusion unnecessary.
As noted above, other “business- risk exclusions” will usually exclude coverage in cases such as this one. This principle is illustrated by a recent decision of this court, another post -Gilbert faulty workmanship case from Texas. In VRV Development L.P. v. Mid-Continent Casualty Co., 630 F.3d 451 (5th Cir.2011), a contractor was sued by a property developer for its faulty workmanship. The contractor sought defense and indemnity coverage from its CGL insurer. The insurer denied coverage under the “your work”[4] and contractual liability exclusions,[5] and a suit followed. The district court upheld the denial on unrelated grounds.
On appeal, we found, consistent with Lamar Homes, 242 S.W.3d, at 4, that the faulty workmanship was an occurrence giving rise to coverage under the CGL policy. We found, however, that coverage was excluded under exclusion (l), the “your work” exclusion for “property damage to your work arising out of it.” We also found that the subcontractor exception to that exclusion did not revive coverage, because the parties had included an endorsement in the policy removing the exception.
This ruling was consistent with the guidance of the Texas Supreme Court in two recent faulty workmanship cases, Lamar Homes, 242 S.W.3d at 12, and Pine Oak Builders, Inc. v. Great Am. Lloyds Ins. Co., 279 S.W.3d 650, 653-55 (Tex.2009). There, the Court found that coverage for a contractor’s faulty workmanship under the CGL depends on (i) whether the underlying petition alleges faulty workmanship by the contractor or the subcontractor, and (ii) for work performed by the subcontractor, whether the parties included the endorsement eliminating the “subcontractor exception” to the “your work” exclusion in the policy. In Lamar Homes and Pine Oak Builders the parties had not included the endorsement, so coverage was excluded for the claims alleging faulty workmanship by the contractor, but not for the claims arising out of the subcontractor’s work. In VRV Development the parties had included the endorsement, so coverage was excluded even though the damage was allegedly caused by the subcontractor’s work. In this case, the underlying petition alleges faulty workmanship by the subcontractors and the contractor, and the policy does not include the endorsement eliminating the subcontractor exception.
Thus, the well known endorsement discussed in the above cases was available in *527 this case to exclude coverage for defects caused by the subcontractor’s work had the parties bargained to include it in the policy. They did not do so. We should respect that bargain. More to the point, I read the Texas cases (as did our panel in VRV Development) as having chosen to rely on this “business risk” exclusion, in the form bargained for by the parties, to prevent the contractor’s CGL policy from becoming a performance bond, without the majority’s unnecessary and troublesome expansion of the contractual liability exclusion.[6]
Conclusion
For all of these reasons, I would reverse the district court’s conclusion that the Ewing contract amounted to an assumption of liability that excluded Amerisure’s coverage.
Alternatively, because this decision expands the holding in Gilbert, renders a major portion of the CGL superfluous, and is inconsistent with the way Texas courts have decided this type of case in the past, I would certify the question to the Texas Supreme Court.
Therefore, I respectfully dissent.

. The Texas Supreme Court’s full explanation is as follows:
Independent of its contractual obligations, Gilbert owed RTR the duty to comply with law and to conduct its operations with ordinary care so as not to damage RTR’s property, and absent its immunity it could be liable for damages it caused by breaching its duty. In its contract with DART, however, Gilbert undertook a legal obligation to protect improvements and utilities on property adjacent to the construction site, and to repair or pay for damage to any such property "resulting from a failure to comply with the requirements of this contract or failure to exercise reasonable care in performing the work.” (emphasis added). The latter obligation-to exercise reasonable care in performing its work-mirrors Gilbert’s duty to RTR under general law principles. The obligation to repair or pay for damage to RTR's property "resulting from a failure to comply with the requirements of this contract” extends beyond Gilbert’s obligations under general law and incorporates contractual standards to which Gilbert obligated itself. The trial court granted summary judgment on all RTR’s theories of liability other than breach of contract, so Gilbert’s only potential liability remaining in the lawsuit was liability in excess of what it had under general law principles. Thus, RTR’s breach of contract claim was founded on an obligation or liability contractually assumed by Gilbert within the meaning of the policy exclusion.
Gilbert, 327 S.W.3d at 127.

. E.g., C.T. Drechsler, American Law Reports, 63 A.L.R.2d 1122, § 2[c] (updated weekly) (“Contractual liability exclusion [in Gilbert] ... barred coverage when contractor assumed liability for damages in a contract, not just when contractor assumed the liability of a third party through a contract, and thus the exclusion applied to breach of contract claim brought by owner of damaged building adjacent to the construction site, which claim was based on provision of construction contract in which contractor agreed to protect from damage all improvements and utilities on adjacent property.”); Scott C. Turner, Insurance Coverage of Construction Disputes § 10:8 (2011) ("Besides agreeing to perform the construction work, the insured agreed to repair any damage done to adjacent properties of third parties.”); Hon. Craig Enoch, Digest Texas Supreme Court Cases 2009-2010 Term, 54 The Advoc. (Texas) 1, XVII.A.l. (2011) (“The primary issue in [Gilbert] was whether the contractual liability exclusion in a Commercial General Liability policy excludes coverage for property damage when the only basis for liability is that the insured contractually agreed to be responsible for the damage.... The Court refused to interpret the provision to apply only where the insured assumed another’s liability in a contract, as argued by Gilbert.”); Craig B. Glidden, Business Litigation, 4 West’s Tex. Forms, Business Litigation Ch. 13 Introduction (2011) (“In [Gilbert], the Texas Supreme Court held that the contractual liability exclusion in a CGL policy excluded coverage for property damage when the only basis for liability was that the insured contractually agreed to be responsible for the damage.”)

. E.g., J. Price Collins, et al., Insurance Law, 64 SMU L.Rev. 341, 354-356 (2011) ("Discounting the proposition that 'assumption' referred only to the assumption of another's liability, the supreme court held that the exclusion applies in those situations in which the insured is obligated to pay damages by reason of the contractual assumption of liability beyond its obligations under general law. Because Gilbert already owed a duty to RTR under general law principles to exercise reasonable care in performing its work, the supreme court concluded that the obligation to pay for damages 'resulting from a failure to comply with the requirements of this contract’ represented an additional liability Gilbert assumed by contract.”); Mark M. Schneier, 31 No. 9 Construction Litigation Reporter 9 (2010), and 32 No. 2 Construction Litigation Reporter 8 (2011) (“Independent of the prime contract, Gilbert owed RTR the duty to conduct its operations with ordinary care so as not to damage RTR’s property and, absent immunity, Gilbert may have been liable to RTR for breaching its duty. In the prime contract, however, Gilbert undertook a legal obligation to protect properties adjacent to the work site, and to repair or pay for damage to any such property ... ”).

. A standard exclusion in CGL policies excludes coverage for " '[p]roperty damage' to 'your work' arising out of it or any part of it.” "Your work” means, inter alia, "[w]ork or operations performed by you or on your behalf." See VRV Development, 630 F.3d, at 455.

. These were the bases for denying coverage for the claims that faulty workmanship resulted in damage to the subject of the contract, as is the issue here. The contractor also sought coverage for claims of damage to other property. This coverage was denied because the damage occurred outside the effective period of the policy, a denial which we upheld on appeal. See VRV Development, 630 F.3d at 458-59.

. The majority acknowledges this issue but endorses the contractual liability exclusion as merely another way to resolve these types of cases. This position would be acceptable if application of the contractual liability exclusion and the "your work” exclusion led to the same result. However, the "your work” exclusion contains the "subcontractor exception,” for which the contractual liability exclusion contains no equivalent. The majority thus reads this exception out of existence. In my view, this renders a significant change in Texas insurance law, upsetting parties’ settled expectations and dictating that these cases will henceforth be decided differently in federal court than they have been decided in Texas.
Like the majority, despite this result, I would still interpret the contractual liability exclusion to exclude coverage here if I thought that was the holding of Gilbert. I do not, for the reasons explained above. My observation that this interpretation yields a more coherent role for the contractual liability exclusion in the CGL policy merely reinforces this view. See Gilbert, 327 S.W.3d at 126 ("We examine the entire agreement and seek to harmonize and give effect to all provisions so that none will be meaningless.”).