# IN THE SUPREME COURT OF TEXAS

No. 18-0837

LOYA INSURANCE COMPANY, PETITIONER,

v.

OSBALDO HURTADO AVALOS AND ANTONIO HURTADO
AS ASSIGNEES OF KARLA FLORES GUEVARA, RESPONDENTS

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FOURTH DISTRICT OF TEXAS

**Argued February 26, 2020**

JUSTICE BUSBY delivered the opinion of the Court.

The eight-corners rule directs Texas courts to determine a liability insurer's duty to defend its insured based on (1) the pleadings against the insured and (2) the terms of the insurance policy. In this case arising from a car crash, an insurer withdrew its defense after discovering that its insured and the driver of the other car lied to secure insurance coverage. To address such cases of collusive fraud, we adopt an exception to the eight-corners rule: courts may consider extrinsic evidence regarding whether the insured and a third party suing the insured colluded to make false representations of fact in that suit for the purpose of securing a defense and coverage where they would not otherwise exist. If the insurer conclusively proves such collusive fraud, it owes no duty to defend. An insurer confronted with undisputed evidence of collusive fraud may choose to

withdraw its defense without first seeking a declaratory judgment, though it risks substantial liability if its view of the duty to defend proves to be wrong. We reverse the court of appeals' judgment and reinstate the trial court's judgment.

## BACKGROUND

Loya Insurance Company (the insurer) sold an automobile liability insurance policy to Karla Flores Guevara. Guevara's husband, Rodolfo Flores, was explicitly excluded from the policy's coverage. While moving Guevara's car, Flores collided with another car carrying Osbaldo Hurtado Avalos and Antonio Hurtado (collectively, the Hurtados). The Hurtados, Guevara, and Flores agreed to tell both the responding police officer and the insurer that Guevara was driving the car rather than Flores.

The Hurtados sued Guevara and sought coverage from the insurer, claiming damages resulting from Guevara's negligent operation of her vehicle. The insurer furnished an attorney to defend Guevara. Early in the discovery process, Guevara disclosed the lie to her attorney and identified Flores as the driver. The insurer responded to this information by canceling Guevara's scheduled deposition and denying her both a defense and coverage. The trial court granted the Hurtados' motion for summary judgment and rendered judgment against Guevara, awarding the Hurtados $450,343.34.

Guevara assigned her rights against the insurer to the Hurtados. The Hurtados then filed this suit against the insurer, alleging its denial of a defense and coverage was negligent, breached the insurance contract, breached the duty of good faith and fair dealing, and violated the Texas Deceptive Trade Practices–Consumer Protection Act (DTPA). The insurer brought counterclaims for breach of contract, fraud, and a declaratory judgment that it owed no coverage and had no duty

2

to defend because Flores, an excluded driver, was driving at the time of the accident. The insurer deposed Guevara, who recanted her initial statement that she, rather than Flores, was driving. The insurer then moved for summary judgment on the ground that it owed no coverage or duty to defend, and it attached excerpts of Guevara's depositions as evidence.[1]

The trial court granted summary judgment for the insurer, remarking at the hearing on the motion that the Hurtados were "asking this Court to ignore every rule of justice and help [them] perpetuate a fraud." The Hurtados appealed, arguing the summary judgment was improper under the eight-corners rule because the insurer had a duty to defend as a matter of law based on the terms of the insurance policy and the face of the pleadings in the underlying suit, which alleged Guevara was driving at the time of the accident. The court of appeals reversed the trial court's judgment, holding that, "as logically contrary as it may seem," the insurer had a duty to defend under the eight-corners rule. 592 S.W.3d 138, 145 (Tex. App.—San Antonio 2018). One justice concurred in the judgment, urging us to adopt a narrow exception to the eight-corners rule for instances of undisputed fraud and collusion designed solely to create a duty to defend. *Id.* at 146–47 (Angelini, J., concurring).

## ANALYSIS

### I. Courts may consider extrinsic evidence regarding collusion to make false representations of facts for the purpose of invoking an insurer's duty to defend.

The duty to defend is a creature of contract arising from a liability insurer's agreement to defend its insured against claims or suits seeking damages covered by the policy. *Richards v. State Farm Lloyds*, ___ S.W.3d ___, ___ (Tex. 2020). Generally, only the four corners of the policy

---

[1] The complete insurance policy is not in the record, though the portion that excludes coverage for Flores is. The insurer has conceded the Hurtados' position that it would have a duty under the policy to defend Guevara against their claims if she had been driving her car at the time of the accident.

and the four corners of the petition against the insured are relevant in deciding whether the duty applies. *Id.* at \_\_\_. Under this eight-corners rule, a "court should not consider extrinsic evidence from either the insurer or the insured that contradicts the allegations of the underlying petition." *Pine Oak Builders, Inc. v. Great Am. Lloyds Ins. Co.*, 279 S.W.3d 650, 655 (Tex. 2009). In particular, "the allegations . . . should be considered . . . without reference to the[ir] truth or falsity . . . and without reference to what the parties know or believe the true facts to be, or without reference to a legal determination thereof." *Heyden Newport Chem. Corp. v. S. Gen. Ins. Co.*, 387 S.W.2d 22, 24 (Tex. 1965). The duty to defend applies even if the third party suing the insured makes allegations that are groundless, false, or fraudulent. *Richards*, \_\_\_ S.W.3d at \_\_\_.

Since our 1965 *Heyden* decision, we have applied the eight-corners rule many times.[2] Although we have not recognized any exceptions to the rule, other courts have, and we left open the question whether to do so in an appropriate case. *See, e.g.*, *id.* at \_\_\_; *GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church*, 197 S.W.3d 305, 307, 311 (Tex. 2006). This is such a case.

We have noted twice before that collusive fraud by the insured might provide the basis for an exception. In *GuideOne*, Jane Doe sued a church for the sexual misconduct of one of its employees. 197 S.W.3d at 307. She alleged that the employee's conduct occurred when the church was insured by the insurer. *Id.* We held the insurer could not offer extrinsic evidence that the employee ceased employment before the effective date of the policy because it agreed to "defend any suit brought against [the insured] seeking damages, even if the allegations of the suit are groundless, false[,] or fraudulent." *Id.* at 310. As we explained, if the insurer "knows [the]

---

[2] *See, e.g.*, *Nat'l Union Fire Ins. Co. of Pittsburgh v. Merchs. Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997); *Fid. & Guar. Ins. Underwriters, Inc. v. McManus*, 633 S.W.2d 787, 788 (Tex. 1982).

allegations to be untrue, its duty is to establish such facts in defense of its insured, rather than as an adversary in a declaratory judgment action." *Id.* at 311. We also declined to recognize a "true-facts exception" to prevent fraud because "the record before us [did] not suggest collusion or the existence of a pervasive problem in Texas with fraudulent allegations designed solely to create a duty to defend." *Id.*

Three years after *GuideOne*, we applied the eight-corners rule again. In *Pine Oak*, five homeowners sued the insured, a homebuilder. 279 S.W.3d at 651. The insured's policies excluded coverage for defective work completed by the builder but included coverage for defective work completed by a subcontractor. *Id.* at 653. In four of the five suits, the owners alleged facts that triggered insurance coverage because their pleadings included references to defective work completed by a subcontractor. *Id.* In the fifth suit, however, the owner alleged only that the builder's work was defective. *Id.* at 653–54. The insurer denied the builder's request for a defense in the fifth suit because the pleadings did not trigger coverage under the policy, which expressly excluded work by the builder. *Id.* at 652–53. We held the insurer was not liable for failing to provide a defense because the pleadings did not allege sufficient facts to trigger its duty to do so. *Id.* at 655–56. But we again reserved judgment on "whether an exception to the eight-corners rule might exist where the parties to the underlying suit collude to make false allegations that would invoke the insurer's duty to defend." *Id.* at 654 n.23.

This case presents just such a circumstance. As to falsity, there is no dispute on this record regarding who was driving the vehicle that collided with the Hurtados. The evidence shows conclusively that the insured (Guevara) was not driving; an excluded driver (her husband) was. The trial judge asked the Hurtados at least three times to point to evidence in the record indicating

5

there was a factual dispute about who was driving the vehicle that collided with them. Had the Hurtados pointed to such evidence, summary judgment in favor of the insurer would have been inappropriate. But the Hurtados did not do so, nor have we found any such evidence in the record.

Turning to collusion, there is also no dispute regarding whether the Hurtados agreed with Guevara and her husband to make false statements about who was driving in order to trigger Guevara's insurance coverage and the insurer's duty to defend. To the contrary, given Guevara's own admissions under oath in this suit, the record shows conclusively that these parties to the underlying case conspired to lie about who was driving to trigger insurance coverage.[3]

Given the contractual foundations of the eight-corners rule, we conclude it does not bar courts from considering such extrinsic evidence regarding collusive fraud by the insured in determining the insurer's duty to defend. We observed in *Pine Oak* that "defense of third-party claims provided by the insurer is a valuable benefit granted to the insured by the policy." 279 S.W.3d at 655. But the duty to defend in liability insurance policies applies to fraudulent allegations against the insured *by third parties*. The insurer has not agreed to undertake, and the insured has not paid for, a duty to defend the insured against fraudulent allegations brought about *by the insured* itself. Thus, an insurer owes no duty to defend when there is conclusive evidence that groundless, false, or fraudulent claims against the insured have been manipulated by the

---

[3] The Hurtados contend we should not reach the question whether to recognize an exception in this case because the insurer is collaterally estopped from relitigating facts regarding Guevara's liability for the accident that were established in their underlying suit against her. But the Hurtados did not preserve this issue for our review. Collateral estoppel is an affirmative defense that must be pleaded unless tried by consent. TEX. R. CIV. P. 94; *Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492, 494–95 (Tex. 1991). Because the Hurtados raised collateral estoppel for the first time at a summary judgment hearing and said nothing in writing on the matter until their appellate briefing, they forfeited the defense. *See Roark*, 813 S.W.2d at 494–95.

6

insured's own hands in order to secure a defense and coverage where they would not otherwise exist.

**II.     When confronted with undisputed evidence of collusive fraud, an insurer need not pursue a declaratory judgment action to determine its duty to defend before terminating its representation.**

The Hurtados next argue that even under this exception to the eight-corners rule, the trial court's summary judgment cannot stand because it was rendered in a suit against the insurer for withdrawing its defense, not in a declaratory judgment suit by the insurer before withdrawing. In other words, the Hurtados contend we should require an insurer to obtain a declaration that it has no duty to defend its insured before it may withdraw the defense. In their view, absent such a declaration, an insurer confronted with undisputed evidence of collusive fraud designed to trigger its duty to defend must continue defending its insured.

The Uniform Declaratory Judgments Act authorizes courts "to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations" among disputing parties. TEX. CIV. PRAC. & REM. CODE § 37.002(b). Although we have encouraged insurers to utilize declaratory judgment actions for prompt resolution of disputes, we have not mandated that course. *Excess Underwriters at Lloyd's v. Frank's Casing Crew & Rental Tools, Inc.*, 246 S.W.3d 42, 46 (Tex. 2008) ("[A]n insurer may seek prompt resolution of its coverage dispute, a course we have encouraged insurers in this position to take.").

Parties may pursue a declaratory judgment action only "if a justiciable controversy exists as to the rights and status of the parties and the controversy will be resolved by the declaration sought." *Bonham State Bank v. Beadle*, 907 S.W.2d 465, 467 (Tex. 1995). "To constitute a justiciable controversy, there must exist a real and substantial controversy involving genuine

7

conflict of tangible interests and not merely a theoretical dispute." *Id.* (citations omitted). We conclude an insurer faced with undisputed evidence of collusive fraud should not be required to pursue a declaratory judgment action before withdrawing its defense for two reasons.

First, an insurer in this position could well conclude there is no justiciable controversy between it and its insured. Nor would a declaratory judgment action promote prompt and efficient dispute resolution if there is conclusive evidence that the insured lied in order to secure a defense and coverage. Requiring a declaratory judgment action regardless of need would subject the parties to unnecessary time and expense, waste judicial resources, and undermine an insurer's ability to make prompt determinations of its coverage and defense obligations—an important benefit of the eight-corners rule.

Second, an insurer that breaches its duty to defend by withdrawing can be held liable for substantial damages and attorneys' fees, which will help ensure that an insurer withdraws its defense without first securing a declaratory judgment only in clear-cut cases. Since we recognized the eight-corners rule in 1965, the Legislature has created causes of action for insureds that provide a litany of damages and other relief when an insurer violates the statutes' terms.[4]

For example, chapter 541 of the Insurance Code allows an insured to recover actual damages, which can be increased up to three times if the trier of fact determines the insurer knowingly committed the unfair or deceptive act or practice. TEX. INS. CODE § 541.152. The

---

[4] *See* Act of May 22, 2003, 78th Leg., R.S., ch. 1274, § 2, secs. 541.001–.454, 2003 Tex. Gen. Laws 3611, 3655–75 (codified at TEX. INS. CODE ch. 541) (adopting statutory consequences for insurer's bad-faith conduct); Deceptive Trade Practices–Consumer Protection Act, 63d Leg., R.S., ch. 143, 1973 Tex. Gen. Laws 322 (codified at TEX. BUS. & COM. CODE §§ 17.41–.63) (enacted "to protect consumers against false, misleading, and deceptive business practices").

8

insured may also recover attorneys' fees and court costs. *Id.*[5] In addition, Chapter 542 of the Insurance Code "may be applied when an insurer wrongfully refuses to promptly pay a defense benefit owed to the insured." *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 20 (Tex. 2007). Statutory damages include the amount of the claim plus interest of 18% per year, attorneys' fees, and prejudgment interest on the amount of the claim if applicable. INS. CODE § 542.060.

An insured may also sue under the DTPA for Insurance Code violations. TEX. BUS. & COM. CODE § 17.50(a)(4). Relief available under the DTPA includes: economic damages, mental anguish damages plus up to treble economic damages if the insurer knowingly committed the act, up to treble economic and mental anguish damages if the insurer intentionally committed the act, injunctions, and attorneys' fees and court costs. *Id.* § 17.50(b), (d).

These consequences, among others, are adequate to ensure that insurers will seek a favorable declaratory judgment before withdrawing a defense in most cases where there is a real controversy regarding the duty to defend. We continue to encourage insurers to take that course.

## CONCLUSION

In determining an insurer's duty to defend, a court may consider extrinsic evidence regarding whether the insured and a third party suing the insured colluded to make false representations of fact in that suit for the purpose of securing a defense and coverage where they would not otherwise exist. Because the trial court considered such evidence and correctly

---

[5] This chapter also authorizes courts to grant injunctions or any other relief they determine is proper. INS. CODE § 541.152(a).

9

determined that it conclusively showed collusive fraud, we reverse the court of appeals' judgment and reinstate the trial court's summary judgment for the insurer.

_____
J. Brett Busby
Justice

**OPINION DELIVERED:** May 1, 2020