

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-25-00015-CV
_____

TEXAS MUNICIPAL LEAGUE INTERGOVERNMENTAL RISK POOL, Appellant

V.

ERNESTO FIERRO, Appellee

On Appeal from the 71st District Court
Harrison County, Texas
Trial Court No. 18-0725

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Chief Justice Stevens

## MEMORANDUM OPINION

Ernesto Fierro was a former police officer for the city of Malakoff (the City). The City is a member of the Texas Municipal League Intergovernmental Risk Pool (Risk Pool), which is a self-insurance pool through which its members collectively self-insure against insurable risks. Following an off-duty altercation that resulted in the death of William Howard Livezey, Jr., Fierro was arrested and indicted for one count of aggravated assault with a deadly weapon (a motor vehicle), one count of official oppression, and three counts of reckless driving.

The estate and surviving family of Livezey (the Livezeys) filed a federal action against Fierro, the City, and the City's police chief. The Risk Pool retained counsel for the defendants in the federal suit. Approximately six months after the federal suit was filed, Fierro pled guilty to the charged offenses, received deferred adjudication, and was placed on community supervision. The Risk Pool withdrew its defense of Fierro in the federal suit, and Fierro proceeded pro se. The Livezeys were granted summary judgment against Fierro, and a judgment was rendered in favor of the Livezeys totaling $6,271,031.63. Turnover relief was then granted to the Livezeys as judgment creditors of Fierro.

Pursuant to the turnover order, the Livezeys, through Fierro, filed a petition against the Risk Pool in the 71st Judicial District Court of Harrison County, and the Risk Pool filed a plea to the jurisdiction. The trial court denied the plea. Following a bench trial, the trial court ruled that the Risk Pool breached its duty to defend and breached its duty to indemnify Fierro and awarded $1,000,000.00 in policy limits and attorney fees. That judgment is the basis of this appeal.

In six issues, the Risk Pool argues that the trial court erred because (1) three coverage exclusions applied: (a) the criminal acts exclusion, (b) the knowing violations of law exclusion, and (c) the matters uninsurable under law exclusion; (2) the record "establishe[s] that Fierro was not engaged in a 'Member Law Enforcement Activity'" during the incident; (3) the underlying uncontested federal judgment against Fierro "does not satisfy the 'Actual Trial' contractual condition precedent"; (4) "the Texas 'Fully Adversarial Trial' requirement precludes consideration of the uncontested federal court summary judgment against Fierro as a compensable damage amount, and [the Livezeys] adduced no competent evidence of damages"; (5) the damage award of $1,000,000.00 "exceed[ed] the highest liability limits under the law enforcement liability coverage"; and (6) it exceeded its subject-matter jurisdiction by awarding consequential damages, extra-contractual damages, and attorney fees, for which the Risk Pool remains immune from suit and liability.

Because we find the criminal acts exclusion to coverage applies, we reverse the trial court's judgment and render judgment that the Risk Pool owed no duty to defend or indemnify Fierro.

## I.     The December 11, 2013, Incident[1]

On the morning of December 11, 2013, Fierro was driving home on his motorcycle after finishing his night shift with the Malakoff Police Department. William, who was seventy years old at the time, was driving a pickup truck hauling a trailer on Highway 31. Eyewitnesses stated that Fierro was driving "aggressively" next to William, "weaving erratically from side to side" in

---

[1]The information contained in this section was obtained from the "Agreed Statement of Facts" filed by the parties. *See* TEX. R. CIV. P. 263.

front of William. Fierro, while driving, "waved to [William] to pull over." Upon pulling over, Fierro engaged William by yelling at him and displaying his badge and gun. According to Fierro, William was the one driving aggressively, forcing Fierro into oncoming traffic. Fierro removed William from his pickup truck, "pinned him against the truck," and handcuffed and arrested William for aggravated assault. When on-duty officers arrived on the scene, Fierro explained that he arrested William for "assault" for trying to run his motorcycle off the road.

During the incident, Fierro was very upset, standing close to William "yelling and shaking his finger . . . in an aggressive and threatening manner." William, who was handcuffed and against his truck, had a shaky voice and "told the officers he was not feeling well," stating that he had chest pain and feared Fierro. Officers allowed William to get back into his truck to warm up and to take his medication. William then grasped his chest, had labored breathing, "turned purple, stopped breathing, and was non-responsive." William, who was transported to the hospital, was pronounced dead from cardiac arrest. William's treating cardiologist explained that "there was a direct causal link between [William's] emotional and physical stress" stemming from the incident with Fierro and his death that day.

## II.    Federal Lawsuit and Criminal Conduct

In February 2014, Fierro was indicted for two criminal charges:  one count of aggravated assault with a deadly weapon (a motor vehicle) and one count of official oppression. "An information subsequently was returned on three counts of reckless driving."

The Livezeys filed their federal civil rights complaint on April 24, 2014, asserting a cause of action under Section 1983 of the United States Code alleging that Fierro, the City (Fierro's

4

employer), and the Malakoff police chief deprived William "of the rights and privileges secured to [him] by the Fourth and/or Fourteenth Amendments to the United States Constitution and by other laws of the United States." Specifically, the Livezeys claimed that the defendants "by and through their acts and/or omissions [were] guilty of unlawful search, seizure, detention, imprisonment, arrest and the use of excessive force relating to and as it pertains to the events that took place on December 11, 2013," concerning William. They further claimed that William "was placed under arrest and detained without adequate probable cause. The Livezeys contended that the Defendants acted with deliberate indifference to the rights, safety, and welfare" of William.

On June 11, 2014, the Risk Pool sent Fierro a letter informing him that the Risk Pool would be providing him legal counsel but further explained that it "reserve[d] the right to rely on the provisions referenced [in the letter] and all other provisions contained in the Liability Coverage Document in determining whether it ha[d] an obligation to pay any damages that might be entered against [Fierro]."

On October 3, 2014, Fierro pled guilty to the criminal charges and was placed on deferred adjudication. The Livezeys subsequently amended their complaint in the federal lawsuit to include Fierro's guilty plea to the underlying conduct during the December 11, 2013, incident. The amended complaint contained causes of action against Fierro for excessive force and false/unlawful detention. In February 2015, the Risk Pool notified Fierro that it no longer had an obligation to provide him with defense counsel, it withdrew its defense, and Fierro proceeded in the federal court pro se.

5

In June 2017, the Livezeys filed a motion for summary judgment in federal court on their claims against Fierro, which was granted on September 4, 2017. The final judgment awarded a total of $6,271,031.63 to the Livezeys. On May 30, 2018, a turnover order was entered, which stated,

> [Fierro's] causes of action . . . against any person, entity or insurance company are hereby assigned to Plaintiffs to pursue in the name of Ernesto Fierro, including but not limited to, any causes of action for breach of contract, negligence, gross negligence, malice, violations of the Texas Insurance Code or [Deceptive Trade Practices Act], breach of the duty of good faith and fair dealing, and/or failure to provide a defense and/or provide coverage for the Judgment Debtor in the above referenced cause by the Texas Municipal League, Intergovernmental Risk Pool, or any other insurer or entity which had provided a defense or should have provided a defense to the Judgment Debtor in the above referenced cause, and any recovery or settlement from said causes of action or claims or lawsuits are hereby assigned to Plaintiffs to apply as credits toward payment of the judgment entered herein.

## III. Underlying Lawsuit

After the turnover order was entered, on June 26, 2018, the Livezeys, in Fierro's name, filed an original petition in the 71st Judicial District Court of Harrison County against the Risk Pool asserting causes of action for breach of contract and conspiracy. The Risk Pool responded, filing a plea to the jurisdiction and an original answer. The Livezeys then filed an amended petition, and the Risk Pool subsequently filed an amended partial plea to the jurisdiction, which was denied.

The case was tried to the bench. The trial court issued its rulings and found that (1) the Risk Pool breached its duty to defend Fierro, (2) the Risk Pool breached its duty to indemnify Fierro, (3) the Livezeys were entitled to $1,000,000.00 in damages, and (4) the Livezeys were entitled to attorney fees.

6

## IV.    Standard of Review

Pursuant to Rule 263 of the Texas Rules of Civil Procedure, the parties entered an agreed statement of facts and exhibits to the trial court.  Under Rule 263, the "[p]arties may submit matters in controversy to the [trial] court upon an agreed statement of facts filed with the clerk, upon which judgment shall be rendered as in other cases."  TEX. R. CIV. P. 263.  "There are no presumed findings in favor of the judgment in a case submitted under rule 263 because the trial court had no factual issues to resolve."  *Patterson-UTI Drilling Co. v. Webb Cnty. Appraisal Dist.*, 182 S.W.3d 14, 17 (Tex. App.—San Antonio 2005, no pet.) (citing *SLW Aviation Inc. v. Harris Cnty. Appraisal Dist.*, 105 S.W.3d 99, 102 (Tex. App.—Houston [1st Dist.] 2003, no pet.)); *see* TEX. R. CIV. P. 263.  "Our review is de novo in an agreed case because the issue before us is purely a question of law."  *Id.*

"[A] 'plaintiff's factual allegations that potentially support a covered claim [are] all that is needed to invoke the insurer's duty to defend[]; whereas, the facts actually established in the underlying suit control the duty to indemnify.'"  *Pharr-San Juan-Alamo Indep. Sch. Dist. v. Tex. Pol. Subdivisions Prop./Cas. Joint Self Ins. Fund*, 642 S.W.3d 466, 471 (Tex. 2022) (second and third alterations in original) (quoting *GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church*, 197 S.W.3d 305, 310 (Tex. 2006)).  "So depending on the factual allegations and the actual facts, 'an insurer may have a duty to defend but, eventually, no duty to indemnify.'"  *Id.* (quoting *Farmers Tex. Cnty. Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 82 (Tex. 1997) (per curiam)).  "Conversely, 'an insurer may have a duty to indemnify its insured even if the duty to defend never arises.'"

*Id.* (quoting *D.R. Horton-Tex., Ltd. v. Markel Int'l. Ins. Co.*, 300 S.W.3d 740, 741 (Tex. 2009)).

"We thus address the duties separately here, beginning with the duty to defend." *Id.*

> While analysis of the duty to defend has been strictly circumscribed by the eight-corners doctrine, it is well settled that the "facts actually established in the underlying suit control the duty to indemnify." *Pine Oak Builders, Inc. v. Great Am. Lloyds Ins. Co.*, 279 S.W.3d 650, 656 (Tex. 2009); *GuideOne*, 197 S.W.3d at 310; [(citing *Trinity Universal Ins. Co. v.*] *Cowan*, 945 S.W.2d [819, 821 (Tex. 1997))]. As with any other contract, breach or compliance with the terms of an insurance policy is determined not by pleadings, but by proof. *See, e.g.*, *Progressive* [*Cnty.*] *Mut. Ins. Co. v. Sink*, 107 S.W.3d 547, 551 (Tex. 2003); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003); *State Farm Life Ins. Co. v. Beaston*, 907 S.W.2d 430, 433 (Tex. 1995). The duty to defend, however, is established according to the eight-corners doctrine, considering only the factual allegations in the pleadings and the terms of the policy. *Pine Oak*, 279 S.W.3d at 654; *Cowan*, 945 S.W.2d at 821.

*D.R. Horton-Tex.*, 300 S.W.3d at 744. "The duty to defend is thus broader than the duty to indemnify; if an insurer has no duty to defend, it has no duty to indemnify; but an insurer may have a duty to defend without being ultimately shown to have a duty to indemnify." *Archon Invs., Inc. v. Great Am. Lloyds Ins. Co.*, 174 S.W.3d 334, 339 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) (citing *Great Am. Ins. Co. v. Calli Homes*, 236 F.Supp.2d 693, 698 (S.D. Tex. 2002); *Collier v. Allstate Cnty. Mut. Ins. Co.*, 64 S.W.3d 54, 59 (Tex. App.—Fort Worth 2001, no pet.)).

## V.      Coverage Exclusions

The Risk Pool first asserts that the trial court erred when it entered a final judgment finding that the Risk Pool breached its duty to defend and indemnify because multiple coverage exclusions apply, as "conclusively established" by the agreed record of the parties. For the following reasons, we agree.

8

## A.     Duty to Defend

The Risk Pool cited the Criminal Acts Exclusion as one of several exclusions that bars the duty to defend in this matter.  The Criminal Acts Exclusion excludes coverage "for damages arising from . . . [a]ny dishonest, fraudulent, criminal or malicious act or omission of any **Member** or **Covered Party**."  The Texas Supreme Court "has held that 'arise out of' means that there is simply a 'causal connection or relation,' which is interpreted to mean that there is but for causation, though not necessarily direct or proximate causation." *Utica Nat'l Ins. Co. of Tex. v. Am. Indem. Co.*, 141 S.W.3d 198, 203 (Tex. 2004) (citation omitted) (quoting *Mid-Century Ins. Co. v. Lindsey*, 997 S.W.2d 153, 156 (Tex. 1999) (citing *McCarthy Bros. Co. v. Cont'l Lloyds Ins. Co.*, 7 S.W.3d 725, 730 (Tex. App.—Austin 1999, no pet.); *Admiral Ins. Co. v. Trident NGL, Inc.*, 988 S.W.2d 451, 454 (Tex. App.—Houston [1st Dist.] 1999, pet. denied))).  As a result, "[o]ur focus must be on the factual allegations that show the origin of the damages and not on the legal theory alleged." *Hochheim Prairie Cas. Ins. Co. v. Appleby*, 255 S.W.3d 146, 150 (Tex. App.—San Antonio 2008, pet. dism'd) (citing *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Merchs. Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997) (per curiam)).

"Under the eight-corners rule, the duty to defend is determined by the claims alleged in the petition and the coverage provided in the policy." *Pine Oak*, 279 S.W.3d at 654 (citing *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 939 S.W.2d at 141; *Heyden Newport Chem. Corp. v. S. Gen. Ins. Co.*, 387 S.W.2d 22, 26 (Tex. 1965)).  In the live complaint here, the Livezeys alleged that Fierro used "excessive force" through his "aggressive conduct, terrorizing, and roughly handcuffing [William]" and stated that "[a]s a direct result of Officer Fierro's conduct, [William]

9

suffered physical and mental/emotional/psychological injuries and was deprived of his constitutional rights, all to his damage." The Livezeys also alleged "false/unlawful arrest and detention," alleging that Fierro "arrested, placed into custody, handcuffed and detained [William] for the offense of Aggravated Assault."

While the Livezeys argue that the damages from "excessive force arose primarily out of acts that were not criminal acts," they ask us to dissect one interaction (the December 11, 2013, incident) into multiple separate "incidents." Yet, the actions complained of in the federal suit all arise from one incident that occurred for which Fierro was also charged criminally. The parties stipulated to Benson's conclusion that there was a direct causal link between the emotional and physical stress that William experienced as a result of the events on December 11, 2013, (his encounter with Fierro) and William's death that day. As to the "false/unlawful arrest and detention" argument made by the Livezeys, Fierro pled guilty to official oppression. Pursuant to the Texas Penal Code, "A public servant acting under color of his office or employment commits an offense [of official oppression] if he: (1) intentionally subjects another to mistreatment or to arrest, detention, search, seizure, dispossession, assessment, or lien that he knows is unlawful." TEX. PENAL CODE ANN. § 39.03(a)(1) (Supp.). The Livezeys' assertion that Fierro engaged in the "false/unlawful arrest and detention" of William falls squarely within the definition of the criminal offense to which Fierro pled guilty.

Here, if not for Fierro's criminal actions, to which he pled guilty, there would be no underlying suit. Moreover, the Livezeys' amended petition highlighted Fierro's plea to the underlying criminal charges, thus bringing the criminal allegations within their pleadings and

10

squarely within the criminal conduct exclusion. Accordingly, we find that the trial court erred when it found that the Risk Pool owed a duty to defend.

### B. Duty to Indemnify

"[T]he supreme court has held that the duty to indemnify is justiciable before trial of the underlying suit where the same reasons that negate the duty to defend may likewise negate any possibility that the insurer will have a duty to indemnify for any judgment." *Collier*, 64 S.W.3d at 62 (citing *Griffin*, 955 S.W.2d at 83). The evidence here conclusively establishes that Fierro pled guilty to his criminal actions which, as the parties agree, led to the death of William. Accordingly, for the same reasons set forth above regarding the applicability of the criminal acts exclusion to the duty to defend, we hold that the Risk Pool had no duty to indemnify Fierro for the judgment against him as a result of his criminal conduct. We, therefore, sustain the Risk Pool's first issue.[2]

## VI. Conclusion

We reverse the trial court's judgment and render judgment that the Risk Pool owed no duty to defend or indemnify Fierro.

Scott E. Stevens
Chief Justice

Date Submitted: September 24, 2025
Date Decided: October 28, 2025

---

[2]Having sustained the Risk Pool's first issue as it relates to the Risk Pool's duty to defend and duty to indemnify, we need not address the Risk Pool's remaining issues. *See* TEX. R. APP. P. 47.1.

11